**John L. McCARTY, Appellant,**

v.

**C. H. LANGDEAU, Receiver of Estate Life Insurance Company, Appellee.**

**No. 10765.**

Court of Civil Appeals of Texas.

Austin.

June 22, 1960.

Rehearing Denied July 13, 1960.

408

McCarthy, Carnahan & Haynes, Amarillo, for appellant.

Cecil C. Rotsch, John R. Grace, Austin, for appellee.

HUGHES, Justice.

By way of summary judgment, appellee, C. H. Langdeau, Receiver of Estate Life Insurance Company, was awarded judgment against John L. McCarty for the sum of $379,280, with 6% interest thereon from the date of judgment, and costs.

Appellee filed suit against appellant June 26, 1959, alleging that on or about July 15, 1955, appellant executed a written agreement whereby he agreed to purchase from Estate Life Insurance Company, 19,370 shares of its no par stock at $20 per share, and that on May 27, 1958, the date upon which Estate Life was placed in permanent receivership; there was due and owing under such contract the sum of $379,280.

The contract declared upon is as follows: ·

"Estate Life Insurance Co.
 Old Line Legal Reserve
 412 West 9th Street
 Amarillo, Texas
                Date   July 15, 1955
"Gentlemen:

"I hereby contract and agree to purchase 19,370 shares of no par stock of Estate Life Insurance Company at a cost of $20.00 per share. This agreement is upon the following terms and conditions:

"1.   There is tendered herewith the sum of $20.00 in cash as the down payment on the said stock and the balance to-wit, $387,380 is to be paid in equal monthly installments, not exceeding 30 in all, commencing the first day of September, 1955. The balance due is to be evidenced by a note payable as herein provided, without interest.

"2.   Said installments are not to be less than $20.00 per month.

"3.   Until said stock is paid for in full, Estate Iife Insurance Company shall have the right to retain the certificate evidencing same and John L. McCarty, President, is hereby granted the power and authority to vote such stock as has been paid for, in my name and in my stead as my proxy. Estate Life Insurance Company is expressly granted a pledgee's lien on said stock until said note is paid or this contract is cancelled as herein provided.

"4.   If there should be a default in the payment of any monthly installment as herein provided, for as long as 30 days, then at the option of the Estate Life Insurance Company this contract shall be null and void. In the event said contract is cancelled, I shall be entitled to receive a certificate for the number of shares fully paid for at the rate of $20.00 per share. It is understood that no fractional shares will be issued and in the event I have paid in sufficient money for a fractional share, then said amount shall be returned to me.

"5.   When said note is paid in full, then I will be entitled to a certificate for the number of shares purchased, at the rate of $20.00 per share, and in the event there is any excess paid in, said excess shall be returned to me.

"$20.00 month      s/John L. McCarty

"Accepted:
Estate Life Insurance Company

By: ———————————————
    John L. McCarty"

Appellant's first point is that the above contract is void since it violates Art. 12, Sec. 6 of the Texas Constitution, Vernon's Ann.St., which provides that, "no corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Appellee objects to our consideration of this point, as well as appellant's points two, five, six, seven and eight, on the ground that this defense was not presented to the Trial Court by any pleading.

Appellant and appellee filed motions for summary judgment. The motions were heard together. The motion of appellant was denied. The motion ·of appellee was granted and judgment was rendered as above indicated.

Appellant never filed any defensive pleading.

■   It is not enough in a summary judgment proceeding that the material facts be undisputed. They, the undisputed facts, must entitle the moving party to a judgment before the rendition of summary judgment is proper. Haley v. Nickels, 235 S.W. 683, Austin Court of Civil Appeals.

In Andrews v. Austin Motor Truck Co., Tex.Civ.App., 259 S.W.2d 772, we suggested that the pleadings of the adverse

party be settled before the moving party should be permitted to call up his motions for summary judgment. The Supreme Court, however, in Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, 237, has held that if the record discloses facts which, if pleaded, would "render the position of the moving party insupportable under the substantive law, it cannot be said that the latter has established his right to judgment as a matter of law."

■ We overrule the contention of appellee that the absence of pleadings by appellant prevent our consideration of his first point. The facts essential to a disposition of this point are undisputed. It is only their legal effect which is here questioned.

■ In Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148, 153, the Court stated: "The issuance and sale of $6,500 stock for notes is in violation of Art. XII, § 6 of the Vernon's Ann.St.Constitution of Texas, and therefore such action was void and of no force and effect." Cited to support this statement is Sec. 283, Hildebrand, Texas Corporations, entitled "Is a note property?" The author there says: "In discussing whether a note is property it must be remembered that the Constitution of Texas only prohibits 'the issuance' of stock until it is fully paid for. Therefore, where a note is given for stock, if it is understood that the stock will not be 'issued' to the subscriber until the note is paid, the contract is valid and not illegal." Cited to support the text are several Texas cases including McCoy v. Bankers' Trust Co., 1918, 200 S.W. 1138, 1141, Dallas Court of Civil Appeals, writ ref.[1] We quote from this case:

"It is well settled that where a contract is susceptible of two constructions, one making it legal and another an illegal contract, the former construction will be adopted. The Con-

stitution of this state simply prohibits the issuance of corporate stock, except for money paid, labor done, or property actually received. There is nothing showing that the stock subscribed for by appellant was ever issued, and, under the facts alleged, it cannot reasonably be said that the contract entered into between appellant and appellee was in contravention of our Constitution."

The court there affirmed a recovery by the corporation on a note given for stock, the stock being tendered upon payment of the note.

The law is much stronger where, as here, the rights of creditors of the corporation are involved. In such cases even though the stock is issued, liability on the notes given in payment of such stock is enforced. To support this statement we cite only the case of Joy v. Godchaux, 35 F.2d 649, 651, Eighth Circuit, because it contains an elaborate review of many Texas and other authorities upon the question. We quote from that opinion:

"Undoubtedly the transaction was contrary to the laws of Texas. If the controversy was between the corporation and appellee, it is probable a court would drop the matter, but the affairs of the corporation are in the hands of a receiver who represents, not only the stockholders, but the creditors, and the rights of creditors have now intervened and have an important bearing on the case.

"The trial court found as a fact that there were insufficient assets in the hands of the receiver to pay the creditors of the company, and that, unless these notes are paid, the creditors will not receive payment of their claims in full. * * *

"If the notes in question were absolutely void under section 6, art. 12, of

1. This notation did not then mean approval of the opinion, Texas Bar Journal Vol. XII, p. 547.

the Constitution of Texas, or under its statutes, then the doctrine of estoppel would not apply, as estoppel cannot make valid that which the Constitution and laws of a state make absolutely invalid, and, in considering whether the notes are void under the Constitution of Texas, we are governed of course as to the construction of that Constitution by the holdings of the highest tribunal of that state. Ramsay v. Crevlin, (C.C.A.) 254 F. 813. We refer therefore to the leading case on this subject of Washer v. Smyer, 109 Tex. 398, 211 S.W. 985, 987, 4 A.L.R. 1320, and from the opinion we quote:

" 'There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock, shall be utterly void. It prohibits such a transaction and therefore makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word "void" is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious increase of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately.

" 'There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities, is-suing out of it, shall be utterly void. It is a distinction familiar in the law. * * *

" 'The constitutional provision was not intended as a shield for the stockholder who has not paid for his stock. It was not framed for his benefit. It was aimed against his acquiring stock except upon lawful payment. It was designed for the protection of the corporation and its creditors. It emphasizes the stockholder's obligation to make full and lawful payment in accord with its mandate, rather than furnishes him a defense when he has failed in that obligation. Its purpose is to give integrity to the corporation's capital. It is to prevent false pretense at its hands, and avoid imposition upon the public. None of these objects would be promoted by declaring a note given by a subscriber for stock uncollectible in the hands of a bona fide holder. * * *

" 'In such a case is the stockholder who has paid nothing for his stock, who has deceived the public, and worked an injustice to other stockholders, to be permitted to take shelter under the Constitution? Is he to be allowed to interpose it to defeat his just obligation? We decline to so hold. It could not have been intended by the framers of the constitutional provision that it should make possible the perpetration of such a fraud by permitting such a defense to be founded upon it. The law should answer in such a case that the stockholder's concern for the sanctity of the Constitution is a trifle belated.'

"The doctrine of this case has not been changed by any subsequent decision. See, also, Thompson et al v. First State Bank of Amarillo, 109 Tex. 419, 211 S.W. 977, where it is held that neither the stock issued nor the notes given therefor is void under the constitutional inhibition. It is apparent,

therefore, that the constitutional provision does not make the notes utterly void. This is in line with other decisions."

Under these authorities it is not necessary that we, in determining this point, choose between the constructions of the above contract suggested by appellant which are that "This contract may be construed either as a contract for the present issuance of shares of stock which are to be held as security for the promissory note referred to, or, it might be construed as the issuance of shares of stock periodically as the note is to be paid."

Under either construction the contract is enforceable in this proceeding.

Appellant's second point is that judgment should not have been based on the contract since the note referred to in it is the true evidence of the indebtedness, and that judgment on the contract would not preclude duplicated liability on the note.

There is nothing in this record to establish the execution, delivery or existence of the note mentioned in the contract.

In Bartelt v. Lehmann, by this Court, 207 S.W.2d 131, writ ref., we held that the rights of a creditor of a corporation against those owing the corporation for unpaid stock subscriptions are measured by the original stock subscription contract, and not by the terms of the subscription notes, which are, as to the creditor, but evidence of the liability of the subscriber.

■ If appellant had desired the surrender of the notes, he should have established their existence. In any event, we hold that his liability on the contract is not affected by the nonproduction of the notes.

Point three is that the contract declared upon had never been accepted by the corporation, or a fact issue was presented as to its acceptance.

■ The contract, considered as an offer, does not show a signed acceptance

upon its face. This may be shown by performance and acceptance of benefits by the person to whom the offer is made. 10-A Tex.Jur. p. 43.

The record in this case discloses:

"That on or about the days and dates below set forth, the appellant paid, or caused to be paid, to Estate Life Insurance Company the listed sums of money to be applied and which were actually applied to such subscription contract:

| "July 15, 1955 | cash | $ 20.00 |
| January 10, 1956 | cash | 1,000.00 |
| February 24, 1956 | cash | 3,000.00 |
| July 27, 1956 | cash | 1,000.00 |
| September 12, 1956 | cash | 100.00 |
| December 11, 1956 | cash | 3,000.00 |

"That on or about the dates listed below, Estate Life Insurance Company issued the following number of shares of stock to be and which were applied to such subscription contract:

"March 9, 1956—issued 200 shares by Certificate No. 1267
July 31, 1956—issued 50 shares by Certificate No. 1443
September 12, 1956—issued 5 shares by Certificate No. 1521
December 31, 1956—issued 150 shares by Certificate No. 4820
January 20, 1958—issued 1 share by Certificate No. 5461
January 20, 1958—issued 5 shares by Certificate No. 5462."

■ It is our opinion that these transactions, standing alone, require the conclusion that the contract was accepted by Estate Life Insurance Company, and that no issuable fact remained as to such acceptance.

The fourth point is that the written contract had been terminated, or that this fact was issuable.

It is appellant's contention that considering the terms of the contract and appellees'

pleading to the effect that a certain number of shares of stock had been fully paid for and issued to him, termination or cancellation of the contract was shown as a matter of law, or at least presented an issue of fact.

■ It is our opinion that the course of dealing between the parties refutes the contention that the contract was terminated by Estate Life. Clearly Estate Life was given the option of terminating its contract upon the conditions stated. Such termination would result in forfeiture of appellant's future rights to purchase the stock as provided in the contract. Forfeitures are not favored in law and may be waived by conduct inconsistent with an intent to insist upon it. 10–A Tex.Jur. p. 426.

■ It will be noted that all departures from the terms of the contract were for the benefit of appellant. Acceptance of payments less than contracted for and premature issuance of stock certificates were acts of leniency on the part of Estate Life. They cannot, in reason, be deemed the acts of one bent on exercising the ususally cruel act of forfeiture. To test the soundness of appellant's position it is only necessary to reverse the situation and have Estate Life claiming forfeiture, based on those acts alone, in a suit by appellant to enforce his rights under the contract. We are confident that forfeiture would be denied in that case and that self imposed forfeiture should be denied appellant in this case.

Points five and six are briefed together. They present the contention "that in the absence of (appellees') pleading of 'estoppel and ratification', the record shows as a matter of law that there was no acceptance by the corporation of the contract in dispute," and that the issues of ratification and estoppel present fact questions.

Appellee pleaded ratification of the contract by Estate Life and estoppel of appellant to deny acceptance of the contract by Estate Life.

We have held that acceptance of the contract by Estate Life was established as a matter of law. If we are correct in this holding then there is no premise for these points, and they are overruled.

Point seven is that no necessity was shown for the judgment rendered against appellant.

The record shows Estate Life to be insolvent but not the extent of such insolvency.

We overrule this point upon the authority of Mitchell v. Bowles, 248 S.W. 459, 460, Amarillo Court of Civil Appeals, where a similar contention was made. We quote with approval from that opinion:

"It would be obviously impossible, until toward the close of the receivership proceedings, to estimate with any exactness the amount that would be finally realized on the assets of the defunct corporation and the amount of its liabilities, and it would be impracticable to require such an accounting in suits brought by the receiver, in an effort to realize on the assets. We have no doubt that in the receivership case proper the plaintiff might before final settlement have an adjudication of any equities and refund of any money paid by him if it would be made to appear that the collection from him was unnecessary to pay the claims of creditors."

See also Mathis v. Pridham, 1 Tex.Civ. App. 58, 20 S.W. 1015, Galveston Court of Civil Appeals.

Appellant's last point is that other defaulting stock subscribers should be joined as parties in this suit. Thomason v. Miller, 4 S.W.2d 668, writ of error dismissed, by this Court, is cited to sustain this point.

■ The rule is there stated that in suits of this character all delinquent subscribers to stock who are solvent and within the jurisdiction of the court should be made parties in order that each should bear

his proportionate share of the deficiency in assets.

We would apply this rule if it were shown by this record that there were other delinquent subscribers to stock in Estate Life. There is no showing to this effect, and hence no occasion for invoking the rule.

The judgment of the Trial Court is affirmed.

Affirmed.