**CITY OF IRVING, Appellant,**

v.

**DALLAS COUNTY FLOOD CONTROL DISTRICT et al., Appellees.**

**No. 26.**

Court of Civil Appeals of Texas.

Tyler.

March 19, 1964.

Rehearing Denied April 9, 1964.

---

C. J. Taylor, Jr., City Atty., City of Irving, Irving, for appellant.

Henry Kucera, City Atty., City of Dallas, Scurry, Scurry & Hodges, Henry Wade, Dist. Atty., Dallas County, Dallas, for appellees.

MOORE, Justice.

This is an appeal from an order of the trial court granting a temporary injunction, enjoining the appellant, City of Irving, from passing on a final reading of its annexation ordinances 833 and 834, attempting to annex a portion of City and County of Dallas Levee Improvement District and Dallas County Levee Improvement District No. 5. The suit was filed by Dallas County Flood Control District, joined by Dallas County Levee Improvement District No. 5 and also by City and County of Dallas Levee Improvement District. The City of Dallas, as well as the State of Texas, both intervened in the suit, joining plaintiffs in their application for injunctive relief against appellant, City of Irving.

The trial court granted appellees a temporary restraining order and after a hearing, the court granted a temporary injunction against the appellant, City of Irving, enjoining the city from passing the annexation ordinances, above referred to, on the ground that Article 974e–8, Vernon's Ann. Tex.St., prohibits a city of less than 425,000 population from annexing any territory within a levee district in this state. The

City of Irving excepted to this portion of the judgment and has perfected this appeal.

Appellees, plaintiffs in the court below, in addition to their contention that the City of Irving was ineligible under Art. 974e–8 to annex the terrritory, also contend that the ordinances were invalid because they include an area of the levee district which was within the city limits of the City of Dallas and further that the ordinances were invalid in that the field notes thereon describing the area to be annexed were so indefinite, uncertain, and ambiguous as to be void. Appellees sought to further enjoin the city from passing said ordinances as written or amending same before a final reading. The trial court refused to grant this portion of the requested injunctive relief and appellees have likewise perfected their appeal to that portion of the judgment.

A brief history of the background and developments in the area covered by the levee districts in question will be helpful in analyzing the problem.

The two levee districts, named above, were originally created prior to 1926 by Constitutional Amendment followed by special enabling statutes by the Legislature. The purpose of their creation was to protect the property along the Trinity River which flowed through the city limits of the City of Dallas. The two districts sold bonds and cleared the land for the floodway, built levees on each side of the river and set up pump stations to accomplish their purpose in flood control. During the 1930s the districts fell into financial distress and in order to protect its property and citizens, the City of Dallas for a number of years lent financial assistance to the two districts in meeting their operating expenses. In 1945 the Legislature created the Dallas County Flood Control District, which encompassed both of the above-named levee districts. The purpose of this action was to attempt to place the whole system of levees and flood control under one operating management and to attempt to place the same on a sound financial ba-

sis. Thereafter, the U. S. Corps of Engineers instituted a program in cooperation with the Flood Control District and the City of Dallas to improve the system at a cost of approximately ten million dollars. The City of Dallas contributed approximately three hundred thousand dollars to this undertaking. According to the record, the entire project has always been in financial trouble and under the existing tax structure will in all probability continue to have trouble in meeting the operating expense amounting to approximately $250,000.00 per annum. The City of Dallas is vitally interested in the proper up-keep, maintenance and control of the two districts due to the fact that the levees on the east and west side of the river, together with the pump stations and other equipment, protect property lying within the City of Dallas from the overflow of the river. The property sought to be protected includes the Dallas County Courthouse as well as a large portion of the commercial district of the city with a valuation in excess of one billion dollars. The levee system was not shown to be instrumental in protecting the City of Irving. It is without dispute that the population of the City of Irving is less than 425,000, same being approximately 60,000.

The area sought to be annexed to the City of Irving is a long strip of land approximately one-half mile in width and six miles in length, extending from the east city limits line of the City of Irving down the diversion channel of the Trinity River and lying between the east and west levees thereof to a point at or near the Commerce Street viaduct in Dallas. The area covers approximately 4,000 acres. It has been cleared for the floodway and contains no improvements except for five pump stations used in connection with the project. The area is subject to overflow, and it cannot be used for any purpose other than a floodway.

This controversy will necessarily involve the construction to be given Chapter 326, p. 561, of the Acts of 52nd Legislature, 1951, and codified as Art. 974e-8.

The preamble and other pertinent portions of the Act are as follows:

"An Act prescribing the powers, duties and obligations of cities including Home Rule cities and those operating under General Laws or special charters having a population in excess of four hundred twenty-five thousand (425,-000) inhabitants with reference to properties of levee improvement districts which have heretofore been annexed or which may hereafter be annexed by such cities; providing a savings clause; and declaring an emergency."

"Section 1. Any city, including Home Rule cities and those operating under General Laws or special charters, having a population in excess of four hundred twenty-five thousand (425,000) according to the last preceding Federal Census, which has heretofore annexed or may hereafter annex all of the territory within a levee improvement district organized under the laws of the State of Texas, shall take over the properties and assets and shall assume all debts, liabilities and obligations and perform all functions and services of such district, and such district shall be abolished."

The remainder of Section 1 sets out the duties and obligations of such cities when any part or all of the district is annexed.

Section 2 contains only the savings clause, and Section 3 the emergency clause, which recites:

"The fact that there is not any law applicable to the annexation by cities of territory situated within levee improvement district * * * creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended * * *."

By points one and two, appellant contends that the trial court erred in ruling

that only a city of more than 425,000 is empowered to annex territory within a levee improvement district and thereby abused its discretion in enjoining the city from annexing the territory because Article 974e–8 does not prohibit such action, and Article 11, Section 5, Vernon's Ann.St. of the Constitution of this State empowers Home Rule cities such as appellant to annex any territory so long as the territory sought to be annexed is (1) adjacent to the city and (2) is not within the boundaries of another municipality.

Appellant further contends that Article 974e–8 has no application to the facts in this case, because such statute is only a special statute, merely defining the powers, duties and responsibilities of cities of over 425,000 population which choose to annex levee improvement districts.

■ The question of legislative intent being in issue, such intention must be ascertained from the provisions of the act itself, as well as related acts and the terms of the Constitution in accordance with the established rules of construction.

■ In construing statutes there is no inflexible rule. The dominant rule to be observed is to give effect to the intention of the Legislature. Generally, the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject matter involved, the end to be obtained, the mischief to be remedied and the purpose to be accomplished. Magnolia Petroleum Company v. Walker, 125 Tex. 430, 83 S.W. 2d 929; Calvert v. Fort Worth National Bank, 163 Tex. 405, 356 S.W.2d 918.

■ Another rule of statutory construction is that it is the duty of the court to examine the entire act and construe it as a whole. By "entire act" is meant the caption or preamble, the body of the act, and the emergency clause. Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680;

Anderson v. Penix, 138 Tex. 596, 161 S.W. 2d 455.

■ Also it must be presumed that the Legislature acted with full knowledge of all existing statutes, and especially those dealing with the subject matter under consideration. Hurt v. Oak Downs, Tex.Civ. App., 85 S.W.2d 294.

It must be further presumed that the Legislature acted with knowledge of all prior decisions upon the subject matter under consideration. Gabbert v. City of Brownwood, Tex., Tex.Civ.App., 176 S.W. 2d 344, err. ref.

With these rules in mind, we turn now to an examination of the act from its four corners.

At the outset it will be observed that in the emergency clause the Legislature expressly declares *"there is not any law applicable to the annexation by cities of territory situated within levee improvement district"* thereby creating an emergency requiring immediate action on the part of the Legislature. (Emphasis supplied.)

■ The emergency clause of a statute may be considered if it tends to shed light upon the inquiry and will aid the court in ascertaining the legislative intent. Huntsville Ind. School Dist. v. McAdams, 148 Tex. 120, 221 S.W.2d 546; Texas Prison Board v. Cabeen, Tex.Civ.App., 159 S.W.2d 523.

Prior to the enactment of Article 974e–8, Home Rule cities, such as appellant, had authority both under Article 11, Section 5, of the Constitution, as well as under the enabling acts found at Article 1165, et seq., to annex additional territory "subject to such limitations as may be prescribed by the Legislature" *provided such act of annexation was not inconsistent with the Constitution and general laws enacted by the Legislature.*

■ Subject to the foregoing limitation, Home Rule cities are granted a broad au-

thorization in the exercise of their legislative power to annex additional territory so long as the territory is adjacent to the city and not within the boundaries of another municipality. State ex rel. Pan American Production Co. v. Texas City, Texas, et al., 157 Tex. 450, 303 S.W.2d 780, citing cases.

Because of the legislative pronouncement "that there is not any law applicable to the annexation by cities of territory situated within levee improvement district," we have reviewed the provisions of Article 16, Section 59, of the Constitution titled "Conservation and development of natural resources; conservation and reclamation districts," as well as the enabling statutes creating authority for establishing levee improvement districts as contained in Article 7972 through Article 8042, V.A.T.S. Nowhere, either in the Constitution, statutes or in any of the cases cited thereunder, have we been able to find any express authorization empowering cities to annex levee improvement districts, or contemplating that cities and levee districts may embrace the same territory. It is significant to note that the Legislature has enacted statutes contemplating that cities and water control and improvement districts, as well as water conservation districts, may embrace the same territory. City of Pelly, et al. v. Harris County Water Control and Improvement District No. 7, et al., 145 Tex. 443, 198 S.W.2d 450.

Such being the situation that existed prior to the enactment of the present statute, the question to be resolved is what was the purpose and intent of the Legislature in passing this law. In attempting to answer the question, the following conclusions and observations would seem to be pertinent to the inquiry.

■ In view of the history of this legislation and the pronouncement of the Legislature in the emergency clause, we have concluded that Article 974e–8 was intended as remedial legislation.

■ In construing remedial or curative legislation, the courts must give such statutes the most comprehensive and liberal construction possible and will not give such legislation a narrow technical construction which will defeat the very purpose for which the statute was enacted. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273; Edwards v. Murphy, Tex.Civ.App., 256 S.W.2d 470.

■ In arriving at the legislative intent, it is necessary to consider all the other statutes relating to the same subject matter and apply the well known rule that where a later act of the Legislature implies a particular construction of statutes in pari materia, interpretation of the prior acts by the Legislature as contained in the latter act is persuasive when a court is called upon to interpret the law. Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054; 39 Tex.Jur., p. 239.

> "It is another established rule that all acts in pari materia are to be taken together, as if they were one law, and that if it can be gathered from a subsequent statute, in pari materia, what meaning the Legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." Cannon's Adm'r v. Vaughan, 12 Tex. 399.

We also deem it important to consider the purpose of the people in adopting the Conservation Amendment, Article XVI, Section 59, of the Constitution. This Amendment expressly declares that the conservation of the state's natural resources, including reclamation, is a public right and duty as contrasted to a private or municipal right and duty. By the very terms of the Amendment the duty was enjoined upon the Legislature to implement the public policy by passing such laws in connection therewith as may be appropriate. Such duty belongs exclusively to the legislative branch and only the Legislature can carry

out the public policy, unless such authority is properly delegated. City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798.

■ The establishment, operation and control of levee improvement districts is considered to be a function of the state and are not to be placed in the same category as water control, conservation and improvement districts. Smith v. Harris County—Houston Ship Channel Navigation District, et al., Tex.Civ.App., 330 S.W.2d 672. The Legislature does not classify them as being in the same category, else the Legislature would have provided a method whereby both a city and a levee district could embrace the same territory as has been provided in other situations as was demonstrated in the City of Pelly case cited above.

■ The question of whether the act under consideration is a general or a special law is thought to be pertinent. We have concluded that Article 974e–8 is a general law even though, necessarily, it applies in practical results only to a very limited number of cities in the state. It does apply, however, to all cities in the state which have a population in excess of 425,000. Hunt et al. v. Atkinson, County Judge, et al. (Tex.Com.App.), 12 S.W.2d 142.

■ Taking into consideration the history of this legislation, together with the Constitution, and applying the pertinent rules of construction, we have come to the conclusion that, since the Legislature has said there was no law applicable to the annexation by cities of territory within levee improvement districts, and since the Constitution declares that conservation of the state's natural resources through the levee districts is a public right and duty, which only the Legislature can carry out, and since the Legislature in carrying out that duty has never heretofore delegated that duty to cities or granted cities the right of annexation, it was the intent and purpose of the Legislature in the enactment of Article 974e–8 to pass a general law authorizing annexation and delegating legislative authority over levee improvement districts to only those cities with a population of more than 425,000. Having thus authorized annexation and delegated authority to perform this important state function only to the larger cities, appellant, City of Irving, was by implication excluded and is thus left without any authority to annex such districts.

If indeed cities had such power before the enactment of the present statute, the effect of the statute is to negate the passing of any such claimed right to cities of less than 425,000 population under the general law of their creation, and at the same time to affirmatively confer exclusive jurisdiction over levee improvement districts upon eligible annexing cities. City of Galena Park et al. v. City of Houston, Tex.Civ. App., 133 S.W.2d 162.

■ Even though it could be successfully argued that appellant, being a Home Rule city, would have had the power to annex such territory under existing law prior to the enactment of Article 974e–8; however, after the enactment of this statute, yet another consideration would also reach the result we have heretofore reached. That is, where two statutes cover the same subject, the one general and the other special, the more specific special statute will control, not upon any theory of implied repeal, but upon the broad rule that all parts of the act or statutes must stand if possible, and that the intention of the Legislature is more clearly reflected by the special statute than by the general one. Both are permitted to stand, the special article or enumeration being treated as though it were a proviso excepting something from the general rule. Thus, here, the general rule broadly covering all cities of more than 5,000 inhabitants, under the Home Rule amendment and the enabling act, permits an extension of the city's boundary lines to cover any territory which is adja-

cent to the city and not within the boundaries of another municipality, but Article 974e–8, applying specially to cities having a population of 425,000 or more, places a limitation upon the general statutes so that any attempted annexation by a city of less than 425,000 is now clearly contrary to the provision of the general law as contained in Article 974e–8. By such construction both statutes are thus permitted to stand, each applying in its proper place. Hunt v. Atkinson, supra; Fortinberry v. State (Tex.Com.App.), 283 S.W. 146.

We hold, therefore, that the intent and purpose of the Legislature in the enactment of this statute was to implement the Constitution and to effect the public policy in furtherance of the state function of conservation by the way of flood control, intending to delegate such functions only to cities with a population above 425,000.

Appellant's contention that since the act also defined the powers, duties and responsibilities of all cities that had theretofore annexed levee districts, the Legislature recognized the power of all cities to annex such districts under the general law governing Home Rule cities or that the Legislature thereby meant to confer such authority on all cities regardless of size, defining only the powers, duties and responsibilities of large cities upon annexation, is not thought to be well taken.

To construe the statute as only prescribing the duties and responsibilities of a city in excess of 425,000, as contended for by the appellant, would be to say that the Legislature intended to recognize or grant the power to annex levee districts to all cities, but intended to impose responsibilities only upon larger cities, and at the same time intended that the smaller cities were to be permitted to annex without assuming such responsibilities. We must assume that at the time of the enactment of this legislation, the Legislature knew of the history and condition of these two districts; we must also assume that the Legislature was cognizant of the fact that the operation of levee improvement districts involved a great deal of expense in their operation and recognized the tremendous responsibility imposed upon them in carrying out this important state function. To hold that by this act, the Legislature intended only to define the powers, duties and responsibilities of large cities in the operation of levee districts, and intended that smaller cities would be permitted to annex such districts without assuming any responsibility for the operation thereof, would be to ascribe to the Legislature an intent to do an unreasonable thing, which the courts will not do if the statute is susceptible of a construction that will not accomplish such result. Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070; Winder v. King, Tex.Com.App., 1 S.W.2d 587; Anderson v. Penix, supra.

The fact that the statute defines the powers, duties and responsibilities of cities of more than 425,000 which may have "heretofore" annexed levee improvement districts, does not alter or detract from the legislative finding that there is "no law applicable" to such annexations. On the contrary, such a provision supports the theory that any such annexation theretofore made was without lawful authority, and would therefore require validation, which it then perfected in cities of over 425,000.

Appellant cites the holding by the Supreme Court in State v. Texas City, Texas, supra, decided subsequent to the present statute, as authority for the proposition that any city of any size may now annex any territory, including levee districts, so long as the same are adjacent to the city and not included in the boundaries of any other municipality. We do not construe the holding there, nor any of the cases cited therein to be controlling in this case. The question of annexation of a levee improvement district was not before the court in that case, nor was Article 974e–8, and therefore the announcement by the court that the only limitation on a city's power of annexation was that the territory be adjacent to the

city and not within another municipality, was but a statement of the general rule and would have no application to the facts in the case now pending before us.

Being committed to the view that from and after the enactment of Article 974e–8, only cities with a population in excess of 425,000 now have any authority to annex levee improvement districts, and the population of appellant city not having been shown to be within that classification, we believe the trial court properly granted the injunction against the appellant, City of Irving, prohibiting the annexation of such territory.

Having reached this conclusion, we see no necessity in discussing appellees' points of error.

The judgment of the trial court is affirmed.