**L. J. GARNER, Appellant,**

v.

**LUMBERTON INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 11614.

Court of Civil Appeals of Texas.

Austin.

July 17, 1968.

Earl B. Stover, Silsbee, for appellant.

R. G. Papich, Beaumont, for appellee.

O'QUINN, Justice.

This appeal is from a summary judgment in district court holding in effect that L. J. Garner, the appellant, did not timely file notice for hearing following his suspension and termination of employment as school superintendent with the Lumberton Independent School District.

Appellant Garner was superintendent of the school district under a three-year con- tract of employment that became effective July 1, 1964. On the night of December 8, 1966, at a meeting of the district school board, its members voted by a majority of four to three to suspend the superintendent effective immediately and to terminate his employment at the end of the suspension on January 31, 1967. Superintendent Garner was present and knew that night the ac- tion taken by the school board.

On January 4, 1967, the school board met and approved the minutes of the meeting of December 8 at which the superintendent was suspended and ordered discharged ef- fective January 31. Superintendent Garner, acting through his counsel, made a request in writing on January 11, 1967, for a hear- ing before the Lumberton district school board. Two days later the attorney for the school board advised the superintendent by letter that his request for hearing had been "forthwith denied" for failure to file his request within fifteen days after December 8, as required under rules for procedures on hearings and appeals adopted by the State Board of Education.

From this decision Superintendent Gar- ner sought an appeal to the State Commis- sioner of Education at Austin by letter dated January 27, 1967. The Commissioner refused to entertain the appeal on the ground that he was without jurisdiction because the initial request for hearing had not been filed within fifteen days after De- cember 8, 1966. The Commissioner's decision was made February 2, and on February 14, 1967, Superintendent Garner appealed from the decision to the State Board of Edu- cation. The State Board of Education in a meeting held June 3, 1967, reversed the de- cision of the State Commissioner and or- dered him to hear the appeal of Superinten- dent Garner.

The Lumberton Independent School Dis- trict brought suit in district court of Travis County to set aside the order of the State Board of Education. The school district later moved for summary judgment in the trial court.

The trial court found "an absence of any genuine issue of material facts concerning the failure of Defendant L. J. Garner to file a TIMELY NOTICE for hearing regarding his suspension and termination of employment * * * and it appearing that the order of the State Board of Education entered on June 3, 1967, should be in all things set aside and vacated; and, it is accordingly found that there is no substantial controversy regarding the question of TIMELY NOTICE by the Defendant * * *"

The trial court granted the school district's motion for summary judgment. L. J. Garner has perfected his appeal from the judgment.

The fifteen-day rule upon which the school district relies to sustain the action of the trial court is found in administrative rules of the State Board of Education adopted pursuant to statutory authority contained in Article 2654–3, Vernon's Ann.Civ. Sts. (Acts 1949, 51st Leg., p. 537, ch. 299, art. III, pp. 541–2).

The statute provides that the State Board of Education, "As one part of the Central Education Agency * * * shall have the specific responsibility for adopting policies, *enacting regulations and establishing general rules* for carrying out the duties placed upon it or upon the Central Education Agency by the Legislature." (Emphasis added) Art. 2654–3, sec. 2.

In section 101 of "Procedures on Hearings and Appeals," the State Board of Education declares that:

"In grievances or controversies involving administrative actions or problems of local school districts, 'aggrieved parties shall be afforded a full hearing, as hereinafter prescribed in Section 107, before the Board of Trustees of the district, provided request in writing has been timely filed by aggrieved party or parties as prescribed in Section 107." Art. 1, sec. 101, Procedures on Hearings and Appeals.

Section 107 of the rules provides:

"The aggrieved party shall file a request in writing with the officer or board for such hearing, which shall identify the ruling, action or failure to act complained of; such requests shall be filed within fifteen (15) days of the date on which notice of such action or ruling is communicated to the person requesting the hearing." Art. 1, sec. 107, par. 1, Procedures on Hearings and Appeals.

Superintendent Garner contends under two points of error that (1) there is express statutory authority for the State Board of Education to suspend operation of its rules and regulations in individual cases and (2) sufficient facts existed to justify the State Board in entering its order requiring the State Commissioner to give Superintendent Garner a hearing.

We sustain these points of error and will reverse and render the judgment of the trial court.

Article 2654–3, after clothing the State Board of Education with rule-making powers, additionally in the same section authorized the State Board to suspend operation of the rules "in individual cases" in the following language:

"The State Board of Education *shall have power to suspend the operation of its rules* and regulations and those of the State Commissioner of Education *in individual cases*, and shall pass upon appeals made from the decisions of the Commissioner in applying such rules and regulations." Art. 2654–3, sec. 2, Vernon's Ann.Civ.Sts. (Emphasis added)

The Lumberton school board contends that the question of statutory authority to suspend operation of the rules in individual cases, was not raised in the trial court and therefore "is outside the record and is not subject to consideration" by us on appeal. We overrule this contention.

The undisputed facts are that Superintendent Garner did not timely file his notice

of appeal. As this Court pointed out in McCarty v. Langdeau, 337 S.W.2d 407 (Tex.Civ.App., Austin, writ ref. n. r. e.), "It is not enough in a summary judgment proceeding that the material facts be undisputed. They, the undisputed facts, must entitle the moving party to a judgment before the rendition of summary judgment is proper." 337 S.W.2d 407, 409, col. 2.

The absence of pleadings by Superintendent Garner will not prevent our consideration of his first point. Although the facts essential to disposition of this point are undisputed, as they were in McCarty v. Langdeau, "It is only their legal effect which is here questioned." 337 S.W.2d 407, 410, col. 1. In McCarty v. Langdeau the court was concerned with the legal effect of the facts under a provision of the Constitution of this State. We must examine the undisputed facts to determine their effect upon the rights of Superintendent Garner under the provisions of a statute.

■ It is settled that on appeal if it is found that the summary judgment record discloses facts which render untenable the position of the moving party, the summary judgment will be reversed regardless of defects that may exist in the pleadings of the party opposing the motion for judgment. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233; Morris v. University of Texas, 348 S.W.2d 644 (Tex. Civ.App., Austin, rev. on other grounds, 163 Tex. 130, 352 S.W.2d 947).

■ The appellate court is not limited to factual allegations, though accepted as true, but may look also to facts of which the court takes judicial notice, in determining whether as a matter of law there was basis to support a recovery for the movant. Buckner Orphans Home v. Berry, 332 S.W.2d 771 (Tex.Civ.App., Dallas, writ ref. n. r. e.).

The legislature has declared the State Board of Education "to be the policy forming and planning body for the Public School System of the State." The State Board consists of members elected, one from each of the congressional districts of the State. The statutes declaring the powers of the State Board of Education are a part of a comprehensive enactment of the legislature related to the public free schools of the State which was passed pursuant to "a thorough study * * * undertaken under authority of the Legislature * * *." Acts 1949, 51st Leg., p. 537, ch. 299.

■ The rule-making powers of the State Board of Education are clearly stated by the legislature. In the same section granting the power to make rules the legislature granted the "power to suspend the operation of its rules and regulations * * * in individual cases." There can be no doubt of the legislative intent to entrust the State Board of Education with discretion to suspend its rules in individual cases when in the judgment of the State Board to suspend would be in the interest of carrying out the duties placed upon the Board.

In his brief Appellant Garner takes the position that, "It is significant to note that the State Board of Education's order * * * was passed with full knowledge of the * * * holding in Bear v. Donna Independent School District * * *" decided in 1935, and that " * * * the State Board of Education was relying upon the Legislature enactment of 1949 for the authority that such Board had the right of suspending the rules and regulations in meritorious individual cases."

The Lumberton district board misconstrues this argument of Superintendent Garner and relies upon Bear v. Donna Independent School District in its contention that the case is controlling of the facts in this cause. We do not consider the case controlling.

It was held in Bear v. Donna Independent School District, 85 S.W.2d 797 (Tex.Civ. App., San Antonio, writ dsmd.), that when a district school superintendent waited eight months to file his appeal from action of the local board discharging him, the State Superintendent did not have jurisdiction to

hear the appeal. Pursuant to statute, rules had been promulgated by the State Superintendent requiring appeals to be filed within fifteen days from date of the decision contested. The statute did not provide for suspension of the rules. (Article 2657, R.S.1925)

The legislature provided in Article 2657 that the State Superintendent (now State Commissioner) would be "empowered to issue instructions and regulations" in all cases where the school law "may require interpretation" in order to carry out its purposes. The regulations were to be applicable "also in cases that may arise in which the law has no provision, and *where necessity requires some rule in order that there may be no hardships to individuals, and no delays or inconvenience in the management of school affairs."* (Emphasis added)

In applying this statute the court in 1935 held in Bear v. Donna Independent School District that the State Superintendent, who sought to suspend the fifteen-day rule in an individual case, was without authority to suspend.

In the enactment of 1949 the legislature empowered the State Board of Education to make rules and provided that the Commissioner would "carry out its policies and enforce its rules and regulations." In addition, the State Board was given "power to suspend the operation of its rules and regulations and those of the State Commissioner of Education in individual cases." Article 2654–3, sec. 2.

█ It is settled law in this State that it must be presumed the legislature acted with full knowledge of all existing statutes, particularly those dealing with the subject matter under consideration, and that the legislature acted with knowledge of prior decisions upon the subject. City of Irving v. Dallas County Flood Control Dist., 377 S.W.2d 215 (Tex.Civ.App., Dallas, rev. on other grounds, 383 S.W.2d 571), and authorities cited, 377 S.W.2d 215, 219, col. 2.

We will presume that the legislature had in mind the prior decision in Bear v. Donna Independent School District when the rulemaking power of the State Board was adopted in 1949 and intended to avoid "hardships to individuals" by empowering the State Board to suspend operation of the rules of both the Board and the Commissioner "in individual cases." 53 Tex. Jur.2d, Statutes, sec. 183, and cases cited.

█ We sustain Appellant Garner's first point of error. The trial court erred in granting the motion for summary judgment because Article 2654–3 expressly empowers the State Board of Education to suspend operation of the rules in an individual case. Suspension of the fifteen-day rule is implicit in the State Board's order reversing the action of the Commissioner and directing him to hear the Garner appeal.

█ Grant by the legislature to boards and commissions of the power to suspend rules made by these administrative bodies is not the same as grant of power to suspend a legislative act, a grant generally not approved by the courts. The legislature may delegate rule-making power to facilitate administration of the law. To that end the legislature may authorize the school administrative body that makes the rule to suspend its operation in individual cases where to do so will avoid undue hardships to individuals, and will not prejudice the school system nor cause delay or inconvenience in the management of school affairs. Exercise of the authority to suspend is subject to judicial review.

█ Under the second point appellant urges that there were sufficient facts to justify the State Board of Education in suspending the fifteen-day rule and ordering the Commissioner to hear Garner's appeal. We agree that the evidence before the State Board justified its action and we sustain the point.

The written contract of employment under which Superintendent Garner worked

with the Lumberton school district provided that the district did "not have the right to terminate same except for immoral conduct or a flagrant disregard of the spirit of the provisions of this contract." Garner agreed to perform the duties of superintendent "to the best of his skill and ability, and * * * discharge the duties required by the school laws of this State and such rules and regulations as may be determined by" the district.

In discharging Superintendent Garner, the Lumberton school board did not specify that he had been guilty of any immoral conduct, nor was it claimed that Garner had violated any state school laws or local rules and regulations. In fact, from the record it is clear that the Lumberton board did not rely upon any such charges, either directly or by implication.

The reasons entertained by the Lumberton school board for discharging the superintendent were reflected in the minutes of December 8, 1966, in a motion adopted by the majority. We quote the pertinent language of the motion:

"* * * because of the failure to properly perform his duties and to fulfill the obligations of his office to such a degree as to cause unjust criticism upon this School District and this School Board, and which has caused a feeling of unrest and uncertainty among the teachers of this School District and because of the failure to properly communicate and counsel with this School Board, on the matters pertaining to the welfare and ordinary operation of this School District, all of which constitute a misfeasance of office, I move that the Contract of L. J. Garner, Superintendent of the * * * [Lumberton] Independent School District be suspended this day until the 31st day of January, 1967, at which time the said Contract will be terminated. * * *"

The written contract and the motion adopted by the district board were before the State Board of Education.

The action of the State Board in reversing the Commissioner and ordering a hearing was not hastily taken. The detailed and extensive written appeal to the State Board of Education, filed February 14, 1967, was first considered by the Board at its meeting of March 6. Statements and legal argument were presented by counsel for both the district board and the superintendent. The State Board postponed consideration until its April meeting and requested its attorney to prepare an opinion on the legal questions involved. Counsel for the superintendent and the district board were invited to prepare and file written opinions.

The appeal was continued from the April meeting to the meeting of June 3, due to illness in April of Carl E. Morgan, a member of the Board. Mr. Morgan had indicated a desire to be heard on the Garner appeal.

Mr. Morgan, a resident of Jasper, Texas, was a member of the State Board from the second congressional district in which the Lumberton school district is situated. The record reflects that Mr. Morgan made a statement to the State Board at the June 3 meeting. It was on Mr. Morgan's motion, following his statement, that the Board reversed the decision of the Commission and directed him to hear the appeal.

The statement Mr. Morgan made at the State Board meeting included the following remarks:

"Even though the appeal was not timely filed, Mr. Garner has been in school work for twenty-eight years. The last six and one-half to seven, he has been superintendent of the * * * [Lumberton] school district. During this period * * * [Lumberton] did not have a high school. They were transferring children of high-school age to Silsbee. Silsbee has grown to such an extent that their school became crowded. Silsbee had no alternative except to advise * * * [Lumberton] that it could no longer accept high school students. They agreed, however, to phase gradually prior transfers out. Last year

[1966] was the last year for the children of high-school age to go to Silsbee. When a district is told that and they do not have a high school, they have but one alternative—to get a bond issue passed and build a high school of their own.

"They called three bond elections. The first two were defeated. Mr. Garner took a very active part in trying to get the bond issues passed; fortunately on the third election the bond issue was passed.

"Lumberton district is a school district composed mainly of elderly people, retired or semi-retired, who have no children of school age. When Mr. Garner took such an interest in trying to get the bond issue passed, he became a rather persona non grata.

"Mr. Garner, as far as I am concerned, with due diligence tried to work out a satisfactory solution as far as his retirement or dismissal was concerned by contacting Dr. Edgar, Mr. Graham, and Mr. Huchingson. I do not know whether there was intelligent advice given. He wanted to get the thing resolved. Garner would have retired at the end of the school year. He is not interested in the last six months of his contract. What I am interested in is for him to have a full and complete hearing before his local board.

\*   \*   \*   \*   \*   \*

"I sincerely believe that Mr. Garner because of his long record is entitled to full and complete hearing before his local board. As a member of the State Board of Education, I would like to know the reasons why he was fired."

The written appeal filed by Superintendent Garner with the State Board shows that within one day after the action of the Lumberton school board on December 8, 1966, the superintendent was in communication with the State Commissioner and other executives in the state offices of the school system.

The superintendent gave as his reasons for not filing timely notice, which was due December 24, the following:

"1) Reliance upon the Commissioner of Education assurances on December 9, 1966, that he would offer help and assistance.

2) Mr. Ira Huchingson's statement on December 14, 1966, that he could find no valid reason for the suspension and proposed termination and that the School District would have to pay all sums due under the Contract.

3) Mr. Ira Huchingson's statement on December 15, 1966, that L. J. GARNER would be hearing from the Agency as to what action should be taken.

The decision of the Honorable Commissioner of Education of February 3, 1967, came as a shock in view of the foregoing representations and assurances by the Commissioner and members of his staff, coupled with the legal interpretation of Mr. Ollison that the fifteen (15) day rule had its starting time as of January 31, 1967 (date of separation)."

In his statement before the State Board, Mr. Morgan expressed the view, as already noted, that the superintendent acted with due diligence, and added, "I do not know whether there was intelligent advice given." A majority of the State Board evidently believed that undue hardship would result to the superintendent if the procedural fifteen-day rule should be permitted to deny him at least a hearing. Superintendent Garner had been discharged without a hearing, and twice a hearing had been refused him because he had delayed more than fifteen days in making written request to be heard. The circumstances surrounding his delay did not indicate conscious indifference or neglect on the superintendent's part.

We conclude that the State Board of Education had sufficient evidence before it to justify its action of June 3, 1967, reversing the Commissioner and directing the Commissioner to hear the appeal, even

though the initial appeal had been filed more than fifteen days following the action of the Lumberton school board on December 8, 1966.

The judgment of the trial court granting motion for summary judgment setting aside and vacating the order of the State Board of Education entered on June 3, 1967, is reversed and rendered.

Reversed and rendered.