**EMCO, INC., Appellant,**

v.

**John L. HEALY, Appellee.**

No. 8764.

Court of Civil Appeals of Texas, Texarkana.

May 20, 1980.

Rehearing Denied June 17, 1980.

Daniel J. Sheehan, Jr., Dallas, for appellant.

Joe Baïley Hyden, Frank B. Rynd, Green, Gilmore, Rothpletz & Hyden, Dallas, for appellee.

CORNELIUS, Chief Justice.

Emco, Inc. brought this action against John L. Healy to recover on a promissory note. The note was given by Healy to Emco and assigned by Emco to a bank to finance Healy's purchase of Emco stock. Healy interposed several equitable defenses

and also alleged that the note was unenforceable because it was given in violation of the Texas Constitution and the statutes of both Texas and Illinois, where the note was payable. The jury found against Healy on the equitable defenses, but the trial court concluded that the note was unenforceable because it was given in violation of the Texas Constitution Article XII, § 6 and Texas Business Corporation Act Art. 2.16,[1] as well as the Illinois Business Corporation Act. Judgment was rendered that Emco recover nothing on the note and ordering that Healy reassign the stock.

Emco is a small company which manufactures outdoor lighting fixtures. The company was founded by Jack Zuckerman, who hired Ed Manning as president in 1971 when the company was experiencing difficulties. Manning began to turn the company around, but decided that it needed more capital, so a decision was made to solicit a few key business persons to become shareholders. Mr. Healy was one of those persons. He came to Emco's plant in Rock Island, Illinois, in September of 1973. He was informed about the company and was given a stock offering circular. He decided that he wanted to purchase some of the stock, but he was unable to secure financing in Dallas because of some pending litigation in which he was involved, so Zuckerman and Manning arranged financing for him with the First Trust & Savings Bank of Davenport, Iowa. The financing arrangement was agreed upon prior to the execution of any papers, and all parties were fully informed as to the procedure: Healy would purchase 3,334 shares of Emco capital stock, giving his note payable to Emco in the sum of $50,000.00, together with a

collateral security agreement mortgaging the 3,334 shares to secure the note. The note and security agreement would immediately be assigned, with recourse, by Emco to the Bank. The plan was followed as agreed. The note and security agreement were executed by Healy to Emco, the stock certificate for the 3,334 shares was issued in the name of Healy and attached to the collateral security agreement, the note and the security agreement were then assigned and transmitted to the Davenport Bank, which in turn paid the $50,000.00 note proceeds to Emco. After making several interest payments Healy defaulted on the note. The bank then called upon Emco for performance, whereupon it paid the note and took a reassignment from the bank. Emco then filed suit against Healy to collect the note.

 Emco raises six points of error which, for better organization, will be discussed out of numerical sequence. In Point Four it is contended that recovery should be allowed on the note because the constitutional and statutory provisions were intended to insure that a corporation receive money for its shares, and to rule that a note given for stock is unenforceable in the hands of the corporation would defeat, rather than fulfill, that purpose while protecting a stock purchaser who has agreed to pay for his stock but fails to do so. That argument has some support in logic, but it conflicts with the respected public policy principle that the law will not enforce, as between the parties, the payment of a debt growing out of an illegal transaction. That principle has been repeatedly applied to stock transactions, and it is thus well settled that a note given to a corporation for

---

1. Constitution of Texas, Article XII, § 6:

"Sec. 6. No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Texas Business Corporation Act Art. 2.16:

"A. The consideration paid for the issuance of shares shall consist of money paid, labor done, or property actually received. Shares may not be issued until the full amount of the consideration, fixed as provided by law, has been paid. When such consideration shall

have been paid to the corporation or to a corporation of which all of the outstanding shares of each class are owned by the corporation, the shares shall be deemed to have been issued and the subscriber or shareholder entitled to receive such issue shall be a shareholder with respect to such shares, and the shares shall be considered fully paid and non-assessable.

"B. Neither promissory notes nor the promise of future services shall constitute payment or part payment for shares of a corporation. . . ."

the purchase of shares of stock in that corporation is unenforceable in the hands of the corporation or in the hands of an assignee or holder having, or being charged with, knowledge of the nature of the transaction in which the note was given. *Kanaman v. Gahagan,* 111 Tex. 170, 230 S.W. 141 (1921); *Washer v. Smyer,* 109 Tex. 398, 211 S.W. 985 (1919); *Western National Bank v. Spencer,* 112 Tex. 49, 244 S.W. 123 (1922); *Pruett v. Cattlemen's Trust Company,* 222 S.W. 533 (Tex.Com.App.1920, holding approved); *Turner v. Cattleman's Trust Co.,* 215 S.W. 831 (Tex.Com.App.1919, jdgmt. adopted); *Gurecky v. Owens,* 271 S.W.2d 445 (Tex.Civ.App. Waco 1954, no writ); *Bearden v. Nesuda,* 259 S.W.2d 621 (Tex. Civ.App. Waco 1953, no writ); *Patterson v. Onion,* 202 S.W. 327 (Tex.Civ.App. Dallas 1918, writ ref'd); *Cattlemen's Trust Co. v. Swearingen,* 200 S.W. 596 (Tex.Civ.App. Amarillo 1918, writ dism'd); *Sturdevant v. Falvey,* 176 S.W. 908 (Tex.Civ.App. El Paso 1915, writ ref'd); *Mason v. Bank,* 156 S.W. 366 (Tex.Civ.App. Austin 1913, no writ); 2 I. Hildebrand, Texas Corporations § 301, and cases there cited; Annot., 78 A.L.R.2d 834.

It is also urged, in Point One, that the transaction involved here was legal because money was actually received by the corporation for its stock. The rationale is that because Emco received full value for Healy's note when it was transferred to the Davenport Bank, the constitutional and statutory requirements were met. We do not agree. The assignment of the note to the bank was with full recourse. Even if the assignment had been without recourse, Emco would still have been subject to certain contingent liabilities.[2] In those circumstances, Emco's assignment of the note to the bank amounted to no more than a loan advance by the bank on the collateral of the note. Payment for Healy's stock was still contingent upon his payment of the note, with Emco getting nothing if he did not pay. Where a note is transferred by the corporation to a third party and the corporation still remains secondarily or con-

tingently liable on the note, the stock is not considered paid for. 2 I. Hildebrand, Texas Corporations § 299. Such an arrangement amounts to nothing more than a sale of stock in consideration of a note from the purchaser to the corporation. It is not the same situation as found in cases such as *Citizens' Nat. Bank v. Stevenson,* 231 S.W. 364 (Tex.Com.App.1921, jdgmt. adopted); *Ruthart v. First State Bank, Tulia, Texas,* 431 S.W.2d 366 (Tex.Civ.App. Amarillo 1968, writ ref'd); and *Weichsel v. Jones,* 109 S.W.2d 332 (Tex.Civ.App. Dallas 1937, no writ). In none of those cases did the corporation stand to lose if the note given for the stock was not paid. In none of those cases was the note in payment of the shares given to the corporation. Those cases correctly held that there is nothing illegal in a prospective shareholder buying shares in a corporation by using money he has borrowed from a third party. In this case, however, the corporation financed the initial sale of the stock and stood to lose all of the consideration if the note was not paid. Indeed, that is exactly what happened. Such an arrangement is clearly a violation of the constitutional and statutory provisions. Neither are the cases of *Hatcher v. Jack Miller Milling Corporation,* 501 S.W.2d 439 (Tex.Civ.App. Texarkana 1973, writ ref'd n. r. e.), and *McCarty v. Langdeau,* 337 S.W.2d 407 (Tex.Civ.App. Austin 1960, writ ref'd n. r. e.), applicable here. In the *Hatcher* case, no stock was to be issued until the notes were paid in full. In the *McCarty* case, the court, without deciding whether the stock was issued before or was to be issued after the notes were paid, held that the notes would be enforceable in either event because the suit was on behalf of creditors of the corporation, who stand in the same position as a bona fide holder and can enforce the note even if it was illegally given as payment for stock.

Points Two and Three assert that the transaction here did not violate the constitutional and statutory provisions because the stock was neither issued nor delivered to Healy. We overrule these points.

---

2. See § 3.414 and § 3.417, Tex.Bus. & Comm. Code Ann.

The evidence shows that the certificate was issued in the name of Healy, and although it was retained by the corporation and delivered to the bank to secure the note, Healy was treated in all respects as a stockholder. In such circumstances there was an actual issuance, and at least a constructive delivery, of the stock. *Kanaman v. Gahagan*, supra; *Pruett v. Cattlemen's Trust Company*, supra; *Turner v. Cattleman's Trust Co.*, supra; *Cattlemen's Trust Co. v. Swearingen*, supra. The taking of a collateral security agreement from the purchaser is itself a recognition of the stock's issuance to him, since one cannot mortgage stock which he does not own. *Kanaman v. Gahagan*, supra; *Turner v. Cattleman's Trust Co.*, supra; *Cattlemen's Trust Co. v. Swearingen*, supra.

■ It is also urged that if the stock transaction between Emco and Healy was illegal, Healy was an equal participant in the transaction and thus cannot assert the defense of illegality. We disagree. A party may assert the defense of illegality to prevent the enforcement of an illegal contract against him even though he was himself equally guilty with the other party in voluntarily making the agreement. *American Nat. Bank v. Cruger*, 91 Tex. 446, 44 S.W. 278 (1898); *Burck v. Abbott*, 54 S.W. 314 (Tex.Civ.App.1899, no writ); 13 Tex. Jur.2d Contracts § 204, p. 418.

■ Finally, it is asserted that because the note was secured by the stock itself, it constituted "property actually received" as used in the constitutional and statutory provisions. We reject that proposition. A promissory note, although considered property in the general sense, is not "money paid" or "property actually received" for stock as contemplated by the constitution and statutes. *Washer v. Smyer*, supra; *Thompson v. First State Bank of Amarillo*, 109 Tex. 419, 211 S.W. 977 (1919); *Western National Bank v. Spencer*, supra; *Mason v. Bank*, supra; *McCarthy v. Texas Loan & Guaranty Company*, 142 S.W. 96 (Tex.Civ. App. El Paso 1911, writ ref'd); Model Business Corporation Act Ann. § 19, ¶ 4.04. And while notes secured by first mortgages on real estate have been held to constitute "property actually received", that is entirely different from what we have here, for as said in *General Bonding & Casualty Ins. Co. v. Moseley*, 110 Tex. 529, 222 S.W. 961 (1920), the corporation in those instances has obtained, .

".- . . the right to have the land appropriated . . . This is a valuable right, a property right, as fully so as any contract right, and, in general, as valuable as any such right. The corporation receives it and owns it. It constitutes a distinct asset in its hands; . . ."

That is much more than merely having a mortgage on the stock for which the note was given. A mortgage on a corporation's own stock, which has not been paid for, cannot be said to be a distinct asset available for the protection of creditors. If such an arrangement could be construed as constituting property actually received, the constitutional and statutory provisions would be rendered meaningless and their purpose could easily be thwarted. That the term "property actually received" means property other than the stock itself is confirmed by the following authorities in which the transactions were held violative of the constitutional and statutory provisions even though the corporation retained the stock as collateral security for the loan. *Kanaman v. Gahagan*, supra; *Turner v. Cattleman's Trust Co.*, supra; *Cattlemen's Trust Co. v. Swearingen*, supra.

For the reasons stated, we conclude that the trial court correctly ruled that the note, in the hands of Emco, was unenforceable because it was in violation of Article XII, § 6, Texas Constitution and Article 2.16, Texas Business Corporation Act.

In view of the disposition we have made of this cause, it is unnecessary to discuss appellee's cross-points except to say that those complaining of the court's failure to rescind the transaction present nothing for review because the court ordered Healy to reconvey to Emco the stock represented by the note and in turn declared the note unenforceable.

The judgment of the trial court is affirmed.