OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 5, 1999

Mr. Charles L. Dunlap
Executive Director
Teacher Retirement System of Texas
1000 Red River
Austin, Texas 78701

Opinion No. JC-0043

Re: Permissible investments of Teacher Retirement System and related questions (RQ-1174)

Dear Mr. Dunlap:

On behalf of the Board of Trustees of the Teacher Retirement System (the "Board"), you inquire about the Board's authority to invest the retirement system's trust fund. You first inquire about the scope of the term "securities" in article XVI, section 67 of the Texas Constitution, which provides that the assets of the retirement system are to be invested in "such securities as the board may consider to be prudent investments." We reject the conclusion of Attorney General Opinion MW-152 (1980) and Letter Opinion No. 94-052 that "securities" within this provision consists of those investments that the federal Securities and Exchange Commission or the State Securities Board has determined to be a security within the regulatory statutes they administer. Instead, we conclude that "securities" is to be defined by reference to chapter 8 of the Texas Business and Commerce Code, which defines securities for investment purposes.

You also inquire about the authority of the Board under section 825.301(b) of the Texas Government Code to delegate authority to manage certain investments to outside managers. We conclude that the Board of Trustees lacks authority to delegate its discretionary authority over investments to private investment managers.

## I.      Introduction

Article XVI, section 67(b)(1) of the Texas Constitution provides that the "legislature shall establish by law a Teacher Retirement System of Texas to provide benefits for persons employed in the public schools, colleges, and universities supported wholly or partly by the state." See TEX. CONST. art. XVI, § 67(b)(2) (similar provision applicable to the Employees Retirement System for officers and employees of the state). The amount contributed by a person participating in the Teacher Retirement System of Texas ("TRS") "shall be established by the legislature but may not be less than six percent of current compensation." Id. § 67(b)(3). See TEX. GOV'T CODE ANN. § 825.402(5) (Vernon 1994) (rate of contribution for retirement system members is 6.4 percent of member's annual compensation). "The amount contributed by the state may not be less than six

percent nor more than 10 percent of the aggregate compensation paid to individuals participating in the system." TEX. CONST. art. XVI, § 67(b)(3); *see* TEX. GOV'T CODE ANN. § 825.404(a) (Vernon 1994) (state contributes to retirement system an amount equal to eight percent of aggregate annual compensation of all retirement system members during that fiscal year).

The TRS trust fund, which is held in trust for the benefit of members, TEX. CONST. art. XVI, § 67(a), exceeds $60 billion in value. Brief from Teacher Retirement System of Texas to Office of Attorney General 15 (Sept. 18, 1998) [hereinafter TRS Brief 9/18/98]. Approximately sixty percent of the portfolio is invested in equity securities traded on domestic and foreign public exchanges, with the bulk of the remainder invested in fixed-income instruments such as corporate and government bonds. *Id.* at 14. "Depending on the current market values of the publicly-traded securities in the portfolio, between 1 and 3% of the portfolio is invested in real estate mortgages or real estate accrued through foreclosure or deed in lieu of foreclosure and alternative investments such as the Texas Growth Fund." *Id.*; *see* TEX. CONST. art. XVI, § 70 (establishing Texas Growth Fund to make investments "directly related to the creation, retention or expansion of employment opportunity and economic growth in Texas" and authorizing investment in growth fund of TRS fund and certain other constitutionally established trust funds).

As background to your questions, you refer to the "Report to the Legislative Audit Committee Regarding the Investment Program and Practices of the Texas Teacher Retirement System," prepared by Independent Fiduciary Services, Inc. ("Fiduciary Services"), and submitted to the Legislative Audit Committee in October of 1996. The Report suggests that the Teacher Retirement System consider investing in "alternative" investments, high yield bonds, and financial futures contracts as a means of diversifying its investments. "Alternative investments," as commonly defined, include "a wide range of disparate strategies and types of assets, including emerging market securities (i.e., debt and equity of companies based in underdeveloped countries), private domestic equity (including venture capital and mezzanine financing), international private equity, leveraged buy-out funds, distressed securities (issued by companies which the investment manager seeks to "turn around"), oil and gas programs, timberland and farmland." INDEPENDENT FIDUCIARY SERVICES, INC., REPORT TO THE LEGISLATIVE AUDIT COMMITTEE REGARDING THE INVESTMENT PROGRAM AND PRACTICES OF THE TEXAS TEACHER RETIREMENT SYSTEM 146-47 (1996) [hereinafter IFS Report]. A State Auditor's report on investment practices at certain state investing entities defines "alternative investments" as follows:

> Investment opportunities which have not been identified by traditional public equity or fixed income capital markets. Also may be defined as private, non-traditional, illiquid investments. . . . Alternative investments are accomplished almost exclusively through private offerings of debt or equity interests, and are often made through entities organized as limited partnerships. Examples of alternative investments include international and emerging market stocks, hedge funds, event driven strategies, as well as illiquid equity

investments such as venture capital, mezzanine financing, private equity and buy-out investing, real estate, and oil and gas.

OFFICE OF THE STATE AUDITOR, A REVIEW OF CONTROLS OVER INVESTMENT PRACTICES AT SIX MAJOR STATE INVESTING ENTITIES 177 (Nov. 1996) [hereinafter Review]; *see also id.* at 180 ("mezzanine financing" is investment in the subordinated debt of privately owned companies, the debt holder participating in equity appreciation through conversion features such as rights, warrants, or options).

The Independent Fiduciary Services report also recommends that the Board "promptly and expressly" decide whether to renew the mortgage loan program, setting out certain fundamental issues the Board should address in making this decision. IFS Report *supra*, at 42. In deciding whether and in what form to renew mortgage lending, "the Board should consider retaining a nationally-prominent strategic real estate consulting firm." *Id.* at 43.

The report states that the review was conducted primarily from an investment perspective and it is not expressing an opinion as to the legality of the measures it recommends. *Id.* at 5. Following a discussion of the merits of delegating investment authority to outside investors, the report recommends that "the Board seek to obtain appropriate clarification or support (whether through legislation, constitutional amendment, if necessary or otherwise), permitting it to delegate investment authority. . . ." *Id.* at 26. Thus, the report does not assume that TRS has present authority to implement its recommendations. *See also* Review *supra*, at 26 (suggesting that TRS and ERS jointly request attorney general opinion regarding their ability to delegate investment authority).

## II.  What is the meaning of "securities" in article XVI, section 67(a)(3) of the Texas Constitution?

Your first question is as follows:

> 1. For purposes of determining the scope of TRS' constitutional and statutory investment authority, is the definition of "securities" for regulatory purposes, e.g., under The Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-4(A) (Vernon Supp. 1998), the sole and exclusive definition upon which TRS must rely? If not, may TRS rely on the concept that a security is the evidence of debt or of ownership obtained as a result of the outlay or commitment of money for the purpose and with the expectation of earning revenue, income or profit from its employment in a common (separate) enterprise?

The term "security" is not defined in the constitutional provision, nor is it defined by a statute applicable to TRS. Section 825.301 of the Government Code authorizes the TRS Board to "invest and reinvest assets of the retirement system without distinction as to their source in accordance with Section 67, Article XVI, Texas Constitution" and expressly provides that the Board may invest in

a list of specific securities: "[O]bligations issued, assumed, or guaranteed by the Inter-American Development Bank, the International Bank for Reconstruction and Development (the World Bank), the African Development Bank, the Asian Development Bank, and the International Finance Corporation." Government Code section 825.301(a) also provides that the Board's "[i]nvestment decisions are subject to the standard provided in the Texas Trust Code by section 113.056(a), Property Code," which states the prudent person rule. *See Hoenig & Union Nat'l Bank v. Texas Commerce Bank*, 939 S.W.2d 656, 661 (Tex. App.–San Antonio 1996, no writ).

Prior opinions of this office have advised TRS that the term "securities" in the Texas Constitution, article XVI, section 67(a)(3), is defined according to the definition of this term in the federal and state securities regulatory acts. *See* Tex. Att'y Gen. Op. No. MW-152 (1980), Tex. Att'y Gen. LO-94-052. We examine this prior advice in light of an analysis of article XVI, section 67 of the Texas Constitution.

A.     **History of article XVI, section 67 of the Texas Constitution**

Article XVI, section 67 of the Texas Constitution was adopted in 1975 by the voters' approval of a resolution that consolidated nearly all constitutional provisions relating to state and local retirement systems. CONSTITUTION OF THE STATE OF TEXAS, Amendments Adopted in 1973-1975, 1975 Tex. Gen. Laws LXXV, XLVII, LXXXII-LXXXIII. The constitutional provision sets out the following duties of trustees of statewide retirement systems:

> [e]ach statewide benefit system must have a board of trustees to administer the system and to invest the funds of the system in such securities as the board may consider prudent investments. In making investments, a board shall exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income therefrom as well as the probable safety of their capital. The legislature by law may further restrict the investment discretion of a board.

TEX. CONST. art. XVI, § 67(a)(3). This provision applies to the trustees of the Employees Retirement System ("ERS") as well as the trustees of the Teacher Retirement System. It establishes two important limitations for statewide retirement systems–the funds are to be invested in "securities" and these investments are to be made according to the "prudent person" standard that it sets out.

Local retirement systems are not subject to the constitutional constraints that apply to statewide retirement systems. Article XVI, section 67(c) provides that the "legislature shall provide by law" for creation of a benefits system by a city or county for its officers and employees and for statewide benefit systems available to the officers and employees of cities, counties, and other

political subdivisions. TEX. CONST. art. XVI, § 67(c). Thus, the constitution does not limit local retirement systems to investing in "securities," nor does this provision state the standard of care applicable to trustees in making investment decisions for local retirement systems. The legislature may address these aspects of local retirement systems absent the constitutional constraints applicable to laws on statewide retirement systems. *See Williams v. McKnight*, 402 S.W.2d 505 (Tex. 1966) (legislature may not enact laws in conflict with the constitution); *Jones v. Williams*, 45 S.W.2d 130 (Tex. 1931) (legislature may enact any law not in violation of state or federal constitution).

The constitutional provision that had formerly governed the investment of TRS assets, was repealed by adoption of the same resolution that proposed article XVI, section 67. *See* TEX. CONST. of 1965, art. III, § 48b (repealed 1975). The former provision authorized the TRS Board to invest the assets of the System in specific and narrow categories of investments: bonds, notes or other evidences of indebtedness of the United States, the State of Texas, or a political subdivision of the State of Texas, corporate stocks, bonds, notes, and other evidences of indebtedness, and land, a building, and equipment for the TRS offices. Tex. S.J. Res. 27, 59th Leg., R.S., 1965 Tex. Gen. Laws 2201. Article XVI, section 67 authorized the Boards of TRS and ERS "to invest the funds of the system in such securities as the board may consider prudent investments," thus broadening their investment authority while including strict safeguards for fund security. TEX. LEG. COUNCIL, 2 PROPOSED CONSTITUTIONAL AMENDMENTS ANALYZED 3 (Apr. 22, 1975); *see also* COMM. ON CONST. REV., BILL ANALYSIS, Tex. S.J.R. 3, 64th Leg., R.S. (1975). Given the nature of the TRS funds and the constitutional language, the underlying purpose of the constitutional provision must necessarily be to safeguard the funds *and* maximize returns to provide teachers with the maximum retirement benefits. *See Woods v. Reilly*, 218 S.W.2d 437, 442 (Tex. 1949) (purpose of former art. III, § 48a of the Texas Constitution of 1936 (repealed 1965) was to provide security for public school teachers and provide incentive for qualified persons to become and remain teachers).

Article XVI, section 67, represents a development of the categorical approach to investments found in its predecessor, former article III, section 48b of the Texas Constitution, but it still places limits on the class of investments permissible for retirement system funds. For example, in 1980, this office advised TRS that it could not invest in real estate, because real estate was not a security within the constitutional provision. Tex. Att'y Gen. Op. No. MW-152 (1980). In 1982, a legislative study of public retirement systems commented as follows on the attorney general's opinion:

> Investment of the [TRS] fund is governed by a provision in the Texas [C]onstitution which specifies that the trustees are responsible for investing system assets in such <u>securities</u> as are deemed prudent. This version of the 'prudent person rule,' as interpreted by the State Attorney General, effectively precludes investments in such categories as equity real estate or tangible assets which might, depending on the nature and form of the investment and other

> circumstances otherwise be deemed prudent by a board of trustees
> working under a pure version of the prudent person rule.

SELECT COMM. ON PUB. RETIREMENT SYSTEMS, REPORT TO SPEAKER AND MEMBERS OF THE TEXAS HOUSE OF REPRESENTATIVES 68TH LEGISLATURE 52 (Oct. 1982) (emphasis in original) [hereinafter PRS Report]. A "pure" version of the "prudent person rule" would allow a board of trustees to invest funds limited solely by the "prudent person rule." *See generally* HOUSE RETIREMENT & AGING COMM., BILL ANALYSIS, Tex. S.J. Res. 6, 72d Leg., R.S. (1991). The report recommended to the legislature the removal of specific constitutional and statutory restrictions on the investment of the assets of ERS and TRS and the grant of investment authority in the form of the prudent person rule as defined by common law. PRS Report *supra,* at 54. The Sixty-eighth Legislature did not propose an amendment to article XVI, section 67, but it did adopt provisions authorizing the trustees of TRS to "contract with private professional investment managers to assist the board in investing the assets of the retirement system." Act of May 29, 1983, 68th Leg., R.S., ch. 926, § 4, 1983 Tex. Gen. Laws 5099, 5100 (now codified as TEX. GOV'T CODE ANN. § 825.301(b) (Vernon 1994)).

In 1991 the legislature proposed an amendment to article XVI, section 67 that would have substituted a "pure" version of the "prudent person" rule for the present language, but it was rejected by the voters. The amendment, proposed by Senate Joint Resolution No. 6, would have deleted from article XVI, section 67, the language authorizing the trustees "to invest the funds of the system in such securities as the board may consider prudent investments," and provided them authority "to invest the funds of the system in such *manner* as the board may consider prudent." Tex. S.J. Res. 6, 72d Leg., R.S., 1991 Tex. Gen. Laws 3520 (emphasis in original). The bill analysis for the proposed amendment provides the following background:

> Over several legislative sessions, the Employees Retirement System (ERS) and the Teacher Retirement System (TRS) enabling laws have been amended to remove statutory lists of legal investments for those funds. . . . However, an Attorney General's opinion (MW-152) has held that the Constitution's use of the word "securities" restricts the systems from certain investments.

HOUSE RETIREMENT & AGING COMM., BILL ANALYSIS, Tex. S.J. Res. 6, 72d Leg., R.S. (1991). Thus, article XVI, section 67(a)(3) has not been amended since it was adopted in 1975. We note, however, that a pending resolution proposes an amendment to article XVI, section 67(a)(3) of the Texas Constitution that would delete the term "securities" and authorize the board of a statewide system "to invest the funds of the system in such *investments* as the board may consider prudent investments." Tex. H.R.J. Res. 9, 76th Leg., R.S. (1999) (proposing a constitutional amendment relating to investment of the Texas Growth Fund and by statewide public retirement systems) (emphasis added).

## B.     Rules of constitutional construction

With the history of article XVI, section 67 in mind, we attempt to define "securities" as it appears in this constitutional provision. The provision itself does not define the term "securities," nor are there any judicial decisions construing this term. The statute implementing the TRS investment authority, Government Code section 825.301(a), essentially restates the constitutional authorization and therefore provides us with no guidance in defining terms used in article XVI, section 67. *See generally Hill County v. Sheppard*, 178 S.W.2d 261 (Tex. 1944) (court looks to statute creating office of "criminal district attorney" to construe that term in article V, section 21 of Texas Constitution); *Aerospace Optimist Club v. Texas Alcoholic Beverage Comm'n*, 886 S.W.2d 556, 560 (Tex. App.–Austin 1994, no writ) (looking to bingo statute's definition of "proceeds" to define that term in article III, section 47, Texas Constitution).

In construing the state constitution, a court will give effect to its plain language, also considering the purpose of the provision, its historical context, and the collective intent of the framers and the people who adopted it. *Republican Party v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997); *Cox v. Robinson*, 150 S.W. 1149, 1151 (Tex. 1912) (proceedings of legislative body framing provision may be examined to aid in resolving questions of construction). *See Aerospace Optimist Club*, 886 S.W.2d at 560 (we "look to other sources for instruction as to the meaning and purpose" of the term, including legislative interpretations). The prior state of the law may be examined. *Cox*, 150 S.W. at 1156. The constitution must be read as a whole and ambiguities may be resolved by reference to other parts of the constitution. *Collingsworth County v. Allred*, 40 S.W.2d 13, 14 (Tex. 1931). Thus, a clause that, standing by itself, might seem of doubtful import may yet be made plain by comparison with other clauses or portions of the same instrument. *Purcell v. Lindsey*, 314 S.W.2d 283 (Tex. 1958); *Snelson v. Murray*, 252 S.W.2d 720 (Tex. Civ. App.–El Paso 1952, writ ref'd n.r.e.).

The meaning of constitutional provisions may be ascertained by reference to the common law. *Trimmier v. Carlton*, 296 S.W. 1070, 1079 (Tex. 1927) (delegation of legislative powers). A dictionary may be consulted to determine the meaning of a word employed in a statute. *Texas & P.Ry. Co. v. Railroad Comm'n*, 150 S.W. 878, 881 (Tex. 1912); *see Booth v. Strippleman*, 61 Tex. 378, 382 (1884) (rules analogous to those governing interpretation of statutes and private instruments are referred to in construing constitutional provisions). However, one word may be used to express different ideas, *Oden v. Gates*, 24 S.W.2d 381 (Tex. 1930), and this is true of the word "securities." *Bahre v. Pearl*, 595 A.2d 1027, 1035 (Me. 1991) (definitions of "security" in securities regulatory statute and Uniform Commercial Code article 8 are separate and distinct). The meaning of a word must be determined according to the context, subject matter, and evident intent of the framers and the people. *Oden*, 24 S.W.2d at 382. When one of two equally reasonable constructions of a constitutional provision will give rise to fewer or less complicated questions in its application, that construction should be favored. *Thomas v. Creager*, 107 S.W.2d 705, 710 (Tex. Civ. App.–Eastland 1937, writ dism'd); *see also Moore v. Edna Hosp. Dist.*, 449 S.W.2d 508, 526 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.). When, in addition, one of the two constructions will,

to a greater degree, effect the purpose of the provision, such construction should be adopted. *Creager*, 107 S.W.2d at 710.

## C.    Common-law and dictionary definitions of "securities"

The TRS argues that "securities" within the constitutional provision should be defined by reference to the common law and to dictionary definitions, stating that the definition of securities found in the regulatory statutes is too uncertain to provide the exclusive source for determining its constitutional investment authority. TRS Brief 9/18/98, at 49. "Securities," as TRS defines the term on the basis of the common law and dictionaries, would include any evidence of debt, property, or ownership, and evidences of obligations to pay money or of rights to participate in earnings and distribution of corporate, trust, or other property. *Id.* at 3-4. TRS suggests that cases interpreting the term "securities" in wills may be instructive, *id.* at 36, but we disagree. Such common-law definitions were developed to construe a particular will, not to determine appropriate investments for a public pension fund. *See Huckabee v. Hansen*, 422 S.W.2d 606, 609 (Tex. Civ. App.–Corpus Christi 1967, no writ) (considering whether "securities" in context of will included savings account); *see also Ocean Accident & Guarantee Corp., Ltd. v. First Nat'l Bank*, 84 S.W.2d 1111, 1115 (Tex. Civ. App.–Galveston 1935, writ dism'd) ("securities" within bank burglary and robbery policy included loss of jewelry held by insured as collateral security for loans). These common-law definitions do not apply to the term "securities" as used in article XVI, section 67.

In connection with its argument that dictionary definitions may be relied upon to construe "securities," the TRS brief cites *Webster's* dictionary, which defines "security" as "an evidence of debt or of ownership (as a stock certificate or bond)." TRS Brief 9/18/98, at 35 (citing WEBSTER'S NEW COLLEGIATE DICTIONARY 1045 (8th ed. 1973) & MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1056 (10th ed. 1993)). It also cites the following definition of "securities" from *Black's Law Dictionary*:

> Stocks, bonds, notes, convertible debentures, warrants, or other documents that represent a share in a company or a debt owned by a company or government entity. Evidences of obligations to pay money or of rights to participate in earnings and distribution of corporate assets. Instruments giving to their legal holders rights to money or other property; they are therefore instruments which have intrinsic value and are recognized and used as such in the regular channels of commerce.

*Id.* at 35 (citing BLACK'S LAW DICTIONARY 1354 (6th ed. 1990)) (citation omitted).

TRS proposes an extremely broad definition of securities, one that would in effect remove any limitations on its investment authority imposed by the term "securities" and substitute a formula that is difficult to distinguish from the pure "prudent person" rule. In our opinion, "security" has a meaning that may not be swept away by such construction. A greatly broadened definition of

"securities" for purposes of article XVI, section 67, might give the TRS Board more ability to diversify its portfolio and place funds in novel investments, subject to the prudent person standard. In our opinion, however, such a broad definition would virtually delete the term "securities" from that constitutional provision. We have already noted that in 1982 a committee proposed the deletion of "securities," from article XVI, section 67, and that in 1991 the legislature proposed an amendment to the constitution deleting this term, only to have it defeated by the voters. Thus, the term "securities," with the limitations it places on the TRS investment authority, remains in the constitution.

Moreover, by comparing article XVI, section 67(a)(3) with certain other constitutional grants of investment authority, we can illustrate the limits that the term "securities" imposes on TRS's power to invest the System's assets. The 1988 constitutional amendment that established the Texas Growth Fund and adopted article VII, subsection 5(d) and section 11b of the Texas Constitution grants specific governmental entities broad investment authority over certain constitutional funds. Tex. H.R.J. Res. 5, 70th Leg., 2d C.S., 1988 Tex. Gen. Laws 942; Votes on Proposed Amendments to the Texas Constitution, 1875-May 1993, 1993 Tex. Gen. Laws 23 (Table following index) [hereinafter Votes on Proposed Amendments]. Before the 1988 amendment was adopted, article VII, section 4 of the Texas Constitution provided that the proceeds of selling lands set apart to the public free school fund must be used to purchase other land for the fund,

> or the proceeds shall be invested by the treasurer, as may be directed by the Board of Education . . . , in the bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law . . . .

TEX. CONST. art. VII, § 4 (amended 1883, 1985, 1995).

The voters' approval in 1988 of House Joint Resolution No. 5 established the Texas Growth Fund and authorized the Board of Regents of the University of Texas System and the State Board of Education to invest in the fund. See Tex. H.R.J. Res. 5, 70th Leg., 2d C.S., 1987 Tex. Gen. Laws 942; Votes on Proposed Amendments *supra*, at 23. It moreover broadened the authority of the State Board of Education to invest the assets of the Permanent School Fund. See TEX. CONST. art. VII, §§ 5(d), 11b; *id.* art. XVI, § 70 (constitutional amendments approved by adoption of H.R.J. Res. No. 5). Subsection 5(d) of article VII, as adopted by House Joint Resolution No. 5, provides as follows:

> Notwithstanding any other provision of this constitution, in managing the assets of the permanent school fund, the State Board of Education may acquire, exchange, sell, supervise, manage, or retain, through procedures and subject to restrictions it establishes and in amounts it considers appropriate, *any kind of investment*, including investments in the Texas growth fund created by Article XVI, Section 70, of this constitution, that persons of ordinary prudence, discretion, and intelligence, exercising the judgment and care under the

> circumstances then prevailing, acquire or retain for their own account in the management of their affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

TEX. CONST. art. VII, § 5(d) (emphasis added).

Section 11b of article VII provides similar authority for the Board of Regents of the University of Texas to invest the permanent university fund. The constitutional amendments allowed "the trustees of the Permanent University Fund (PUF) and the Permanent School Fund (PSF) to make any type of investment, subject solely to the prudent-person standard." HOUSE RESEARCH ORG., SPECIAL LEGISLATIVE REPORT, 1988 CONSTITUTIONAL AMENDMENTS, 19, 21 (1988). Article XVI, section 67(a)(3), in contrast, does not accord TRS equally broad authority to invest the teacher retirement fund.

### D.    "Securities" as defined by statute

The definitions of "securities" we have found in the common law and in dictionaries are too broad to define that term in conformity with the purposes of article XVI, section 67(a)(3). We will thus consider the purpose of the provision, its historical context, and the collective intent of the framers and the people who adopted it. *Dietz*, 940 S.W.2d at 89. One aspect of the historical context of article XVI, section 67, is the body of law defining securities that existed in 1975. The subject of securities is comprehensively governed by legislation, so that definitions in statutes may reasonably have shaped the legislature's understanding of the term "securities" in the constitutional amendment.

Although we will examine statutes in effect in 1975 because they are part of the historical context of article XVI, section 67(a)(3), we believe we are not limited to the 1975 versions of those statutes but may look at their amended and successor versions. The legislature could have adopted a statute in 1975, or any time thereafter, defining "securities" for purposes of article XVI, section 67(a)(3), in terms of characteristics typical of that class of investment, and the definition could encompass securities with those characteristics that became available after 1975. Because the legislature has in fact not adopted a statute defining "securities," within article XVI, section 67(a)(3), we will examine statutes adopted for other purposes that define "securities" or address the investment of public funds in securities.

### 1.    Securities regulatory statutes

When this office was first asked to determine whether a particular investment was a "security" within article XVI, section 67(a)(3), it in fact looked to a statutory definition of "security" to construe the constitutional provision. In 1980, TRS asked this office whether it had authority to

invest in real estate or mortgage certificates secured by real estate, and Attorney General Opinion MW-152, issued in response to this question, determined that TRS had authority to invest in mortgage certificates secured by real property but not in real estate itself. Attorney General Opinion MW-152 reviewed definitions of "security" found in the Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-4(A) (Vernon Supp. 1999), and in state and federal cases. It in effect determined that real estate was not a security under any definition of the term.

In 1994, the ERS asked this office whether it had authority under article XVI, section 67 of the Texas Constitution and its enabling legislation to invest its funds in equity swap contracts and interest rate swap contracts. Attorney General Letter Opinion No. 94-052, issued in response to this question, relied on the definition of "security" or "securities" in article 581-4(A) of the Revised Civil Statutes, as well as the substantially similar definition of "security" in the federal Securities Act of 1933, 15 U.S.C.A. § 77b(a)(1) (West 1997), and the federal Securities Exchange Act of 1934, *id.* § 78c(a)(10). It concluded that the ERS might invest its funds in equity swap contracts or interest rate swap contracts if the contracts are securities under either federal or state securities laws, providing, of course, that the ERS Board had determined that investing funds in such contracts was a prudent investment.

Your request for advice has caused us to reconsider the reasoning of Attorney General Opinion MW-152 and Letter Opinion No. 94-052. We reject their conclusion that the securities regulatory statutes are an appropriate source of the definition of "securities" within article XVI, section 67. We do, however, accept the premise of Attorney General Opinion MW-152 that a statutory definition of "securities" that predated the adoption of article XVI, section 67, may assist us in construing the constitutional language.

Attorney General Opinion MW-152 and Letter Opinion No. 94-052 relied on the definition of "securities" in the regulatory statutes without considering whether it carried out the intent of article XVI, section 67—to safeguard the funds and maximize returns to provide security for teachers. The regulatory statutes serve a very different purpose. Securities regulatory statutes were adopted to "eliminate serious abuses in a largely unregulated securities market." *Reves v. Ernst & Young,* 494 U.S. 56, 60-61 (1990); *United Hous. Found., Inc., v. Forman,* 421 U.S. 837, 849 (1975); *Kadane v. Clark,* 143 S.W.2d 197, 199 (Tex. 1940). They define the term "securities" expansively, to help achieve the goal of protecting investors. *Reves,* 494 U.S. at 60-61. With certain omissions not relevant here, article 581-4 of the Revised Civil Statutes defines "security" or "securities" to include

> any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of

> indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, *or any other instrument commonly known as a security, whether similar to those herein referred to or not.*

TEX. REV. CIV. STAT. ANN. art. 581-4 (Vernon Supp. 1999) (emphasis added). This definition is substantially similar to the definition of "security" in the federal Securities Act of 1933, 15 U.S.C. § 77b (West 1997), and the federal Securities Exchange Act of 1934, *id.* § 78c(a)(10), which also include the sweeping description "any . . . instrument commonly known as a 'security,'" in their definitions of security. *Id.* §§ 77b(a)(1), 78c(a)(10). In *Reves v. Ernst & Young*, the United States Supreme Court discussed the reasons for a definition of this breadth:

> The fundamental purpose undergirding the Securities Acts is "to eliminate serious abuses in a largely unregulated securities market." *United Housing Foundation, Inc. v. Foeman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). In defining the scope of the market that it wished to regulate, Congress painted with a broad brush. It recognized the virtually limitless scope of human ingenuity, especially in the creation of "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits," *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), and determined that the best way to achieve its goal of protecting investors was "to define 'the term "security" in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.'" *Foeman, supra*, 421 U.S., at 847-848, 95 S.Ct., at 2058-2059 (quoting H.R.Rep. No. 85, 73d Cong., 1st Sess., 11 (1933)). Congress therefore did not attempt precisely to cabin the scope of the Securities Acts. *Rather, it enacted a definition of "security" sufficiently broad to encompass virtually any instrument that might be sold as an investment.*

494 U.S. at 60-61 (footnote omitted) (emphasis added).

We have reconsidered the assumption in Attorney General Opinion MW-152 and Letter Opinion No. 94-052 that we may rely upon the definition of "securities" in the regulatory acts to

define "securities" in article XVI, section 67 of the Texas Constitution and have concluded that it is incorrect. Accordingly, the Board may not rely on the definition of "securities" from the Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-4(A) (Vernon Supp. 1999), the federal Securities Act of 1933, 15 U.S.C.A. § 77b(a)(1) (West 1997), and the federal Securities Exchange Act of 1934, *id.* § 78c(a)(10), to determine the scope of TRS' constitutional and statutory investment authority. We overrule Attorney General Opinion MW-152 and Letter Opinion No. 94-052 to the extent they rely on the definition of "securities" in the regulatory statute to define that term for purposes of article XVI, section 67(a)(3).

## 2.    **Public Funds Investment Act**

We turn to other statutory sources of information about the term "securities" as used in article XVI, section 67. A 1967 statute authorized state boards and agencies with investment authority

> to invest and reinvest any of their funds in direct obligations of or obligations the principal and interest of which are guaranteed by the United States of America; in direct obligations of or participation certificates guaranteed by the Federal Intermediate Credit Bank, Federal Land Banks, Federal National Mortgage Association, Federal Home Loan Banks, and Banks for Cooperatives; in certificates of deposit of any bank or trust company the kind hereinabove specified; in any other securities made eligible for such investment by other laws and constitutional provisions.

Act of May 25, 1967, 60th Leg., R.S., ch. 401, 1967 Tex. Gen. Laws 915 (initially codified at TEX. REV. CIV. STAT. ANN. art. 6252-5a, § 1 (1925)). This provision was codified as section 2256.101 of the Government Code in 1995 without substantive change, Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 867 (nonsubstantive revision of statutes relating to certain areas of government, including fiscal affairs). It was repealed in 1995 by legislation amending the Public Funds Investment Act, TEX. GOV'T CODE ANN. ch. 2256 (Vernon 1999). Act of May 18, 1995, 74th Leg., R.S., ch. 402, § 1, 1995 Tex. Gen. Laws 2958, 2969.

The Public Funds Investment Act, chapter 2256 of the Government Code, sets out the investments in which a state agency, a local government, or a nonprofit corporation or investment pool acting on behalf of a local government or state agency may generally invest its funds. *See* TEX. GOV'T CODE ANN. § 2256.003 (Vernon 1999); *see also id.* § 2256.004 (provisions do not apply to public retirement system, state funds invested under section 404.024, certain higher education institutions, registry funds, and deferred qualifying compensation plans). While Government Code chapter 2256 is not a successor of the 1969 legislation, it authorizes investment of public funds in the instruments identified in the 1969 legislation as well as certain more up-to-date instruments

suitable for such investments. Thus, its expanded list of investments can be regarded as illustrative of "securities" for purposes of investing public funds.

The authorized investments generally consist of the following: (1) obligations of, or backed by, the United States or its instrumentalities or a state or its political subdivisions, but excluding certain collateralized mortgage obligations, *id.* § 2256.009; (2) secured or guaranteed certificates of deposit issued by state or national banks, savings banks or state or federal credit unions, *id.* § 2256.010; (3) fully-collateralized, repurchase agreements or reverse repurchase agreement with certain terms and attributes, *id.* § 2256.011; (4) banker's acceptances, again with certain terms and attributes, *id.* § 2256.012; (5) high-grade commercial paper, *id.* § 2256.013; (6) no-load money market mutual funds or no-load mutual funds with specific attributes, *id.*§ 2256.014; (7) secured, guaranteed investment contracts, *id* § 2256.015; and (8) cash management funds sponsored by tax-exempt organizations, high-grade, negotiable certificates of deposit, and high-grade corporate obligations, *id.* § 2256.020.

The Public Funds Investment Act deals with the investment of public moneys and represents a legislative balancing of maximizing investment flexibility and protecting public funds in the choice of the authorized investments listed. The purposes and interests served by this statute are closer to those underlying article XVI, section 67(a)(3) than those served by the regulatory statutes, but they are not identical. For example, the TRS funds are not public moneys but trust fund moneys invested to provide retirement benefits for teachers. *See* Tex. Att'y Gen. Op. Nos. JM-300 (1985) (retirement fund of ERS is a trust fund), WW-565 (1959) (ERS assets are trust funds.). But more importantly, the Public Funds Investment Act does not define the term "securities." While its categorical listing of authorized investments may include examples of securities, it does not assist the TRS Board to determine whether or not other investments may be securities. Accordingly, we cannot rely on the Public Funds Investment Act to define securities for the purposes of the constitutional provision.

## 3.     Article 717m-1, TEX. REV. CIV. STAT. ANN., validation of securities

We next consider article 717m-1 of the Revised Civil Statutes. The statute was adopted in 1979, Act of May 27, 1979, 66th Leg., R.S., ch. 400, 1979 Tex. Gen. Laws 874, repealing and replacing a similar provision dating from 1959. *See* Act of May 6, 1959, 56th Leg., R.S., ch. 316, § 1, 1959 Tex. Gen. Laws 690 (codified as article 717m, TEX. REV. CIV. STAT. ANN. (1925)). Article 717m-1 authorizes any state or local governmental entity to institute an in rem proceeding for a declaratory judgment on its authority to issue securities and as to the legality or validity of any

proceedings relating to the securities. *See* TEX. REV. CIV. STAT. ANN. art. 717m-1, §§ 1(1), 2 (Vernon Supp. 1999). In contrast to the Public Funds Investment Act, article 717m-1 defines the term securities:

> "Securities" means all interest-bearing obligations, including without limitation, any bonds, notes, bond anticipation notes, warrants, certificates, or other evidences of indebtedness, whether general or special, whether negotiable or nonnegotiable in form, whether in bearer or registered form, whether in temporary or permanent form, whether with, or without interest coupons, and regardless of the source of payment, whether from taxes, revenues, or both, or otherwise.

*Id.* § 1(2). *See* TEX. REV. CIV. STAT. ANN art. 717m (1925) (repealed) ("securities" in the predecessor statute, consisted of "bonds, notes, or other evidences of indebtedness whether payable from taxes, revenues, or both taxes and revenues"). But the purpose of article 717m-1 is completely different from that of article XVI, section 67. Article 717m-1 allows governmental bodies to obtain declaratory judgments as to governmental securities. Although securities is defined broadly in terms of "evidences of indebtedness," it is nonetheless limited to *governmental* securities, consistent with that statute's purpose and intent. *See Hatten v. City of Houston*, 373 S.W.2d 525, 534 (Tex. Civ. App.–Houston 1963, writ ref'd n.r.e.) (article 717m, TEX. REV. CIV. STAT. ANN. (1925), was adopted to provide speedier and more efficient method of adjudicating validity of public securities than previously available). The purpose of article 717m-1 differs greatly from that of Texas Constitution, article XVI, section 67(a)(3), and its narrow definition of "securities" is not relevant to the investment purposes of the constitutional provision. While article 717m-1 identifies a class of securities in which the TRS may invest, its definition of "securities" does not illuminate that term as it appears in the constitutional provision we address.

## 4.     Uniform Commercial Code definition of securities

We turn to the standard and most commonly accepted definition of investment securities under Texas law, namely that in chapter 8 of the Business and Commerce Code, Uniform Commercial Code–Investment Securities. *See* TEX. BUS. & COM. CODE ANN. § 8.102 (Vernon Supp. 1999) (defining securities). The legislature adopted the Uniform Commercial Code in 1965 and revised and reenacted it in 1967 as part of the Texas Business and Commerce Code.[1] Therefore, the legislature was aware of this statute and its definition of securities when it proposed the 1975 constitutional amendment authorizing the TRS to invest the retirement funds in securities. *See Acker*

---

[1]*See* Act of May 19, 1965, 59th Leg., R.S., ch. 721, 1965 Tex. Gen. Laws 1, 132 (Uniform Commercial Code), *repealed by* Act of May 25, 1967, 60th Leg., R.S., ch. 785, §1, 1967 Tex. Gen. Laws 2343, 2498 (revising and reenacting Uniform Commercial Code as part of Texas Business and Commerce Code).

*v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990); *Garner v. Lumberton Indep. Sch. Dist.*, 430 S.W.2d 418, 423 (Tex. Civ. App.–Austin, no writ) (statute is presumed to have been enacted by legislature with complete knowledge of existing laws, particularly those dealing with subject matter under consideration). Section 8.102(a)(15) of the Business and Commerce Code sets out the general definition of a security in terms of the attributes that an instrument must possess to qualify as a security:

> "Security," except as otherwise provided in Section 8.103, means an obligation of an issuer[2] or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:
>
> (A)  that is represented by a security certificate in bearer or registered form,[3] or the transfer of which may be registered on books maintained for that purpose by or on behalf of the issuer;
>
> (B)  that is one of a class or series or by its terms is divisible into a class or series shares, participations, interests, or obligations; and
>
> (C)  that:
>
>     (i)  is, or is of a type, dealt in or traded on securities exchanges or security markets; or
>
>     (ii)  is a medium for investment and by its terms expressly provides that it is a security governed by this chapter.

*See* TEX. BUS. & COM. CODE ANN. § 8.102(15) (Vernon Supp. 1999) (footnotes added). In short, a security is a share or participation in an enterprise or an obligations that (1) is fully transferable, (2) is one of a series rather than an individual contractual obligation, *and* (3) is itself or is of a type

---

[2]"Issuer" generally includes a person (1) that places or authorizes the placement of its name to evidence an interest in its property or enterprise or duty to perform an obligation represented by the certificate, (2) creates an interest in its property or in an enterprise or undertakes an obligation, that is an uncertificated security, (3) directly or indirectly creates a fractional interest in its rights or property, if the fractional interest is represented by a security certificate, or (4) becomes responsible for or in place of another person described as an issuer. TEX. BUS. & COM. CODE ANN. § 8.201 (Vernon Supp. 1999). A "certificated security" simply means a security that is represented by a certificate, *id.* § 8.102(a)(4), and an "uncertificated security" is a security not represented by a certificate, *id.* § 8.102(a)(18).

[3]"Bearer form" applies to a certificated security and means a form in which the security is payable to the bearer of the security certificate according to its terms and not by reason of any indorsement. *Id.* § 8.102(a)(2). "Registered form" also applies to a certificated security and means a form in which the security certificate names the person entitled to payment; and a transfer of the security may be registered on books maintained by the issuer for that purpose "or the security so states." *Id.* § 8.102(a)(13).

of interest dealt in or traded on securities market or exchanges, *or* is a medium of investment and, by its terms, a security governed by chapter 8 ("opt-in provision"). *See id.* § 8.102 cmt. 15.

Section 8.103 of the Business and Commerce Code further elaborates and refines the general definition in section 8.102(a)(15) by providing that:

> (a) A share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity is a security.
>
> (b) An investment company security is a security. "Investment company security" means a share or similar equity interest issued by an entity that is registered as an investment company under the federal investment company laws, an interest in a unit investment trust that is so registered, or a face-amount certificate issued by a face-amount certificate company that is so registered. "Investment company security" does not include an insurance policy or endowment policy or annuity contract issued by an insurance company.
>
> (c) An interest in a partnership or limited partnership company is not a security unless it is dealt or traded on securities exchanges or in securities markets, its terms expressly provides that it is a security governed by this chapter, or it is an investment company security. However, an interest in a partnership or limited liability company is a financial asset[4] if it is held in a securities account.
>
> . . . .
>
> (e) An option or similar obligation issued by a clearinghouse corporation to its participants is not a security, but is a financial asset.
>
> (f) A commodity contract, as defined in Section 9.115, is not a security or a financial asset.

*Id.* § 8.103 (footnote added). Section 8.103 supplements the general definitions of security and is "intended to foreclose interpretive issues concerning the application of the general definitions to several specific investment products." *Id.* § 8.103 cmt. 1. Thus, subsection (a) establishes that ordinary corporate stock is a security irrespective of whether it is dealt with or traded on the

---

[4]"Financial asset" is a broader category of obligations, shares, participation, and interest that includes "securities," to which assets other UCC rules may apply. *See id.* § 8.102(a)(9) & cmt. 9.

securities exchange or in the securities market. *Id.* cmt. 2. Accordingly, shares of a closely held corporation constitute securities. *Id.*; *Kenney v. Porter*, 604 S.W.2d 297, 302 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e.) (stating that it is generally recognized that stock of closely held corporation is a security). Additionally, investment vehicles offered to the public by investment companies registered under the federal Investment Company Act of 1940 are securities under subsection (b), notwithstanding that the "typical transaction in shares of open-end investment companies is an issuance or redemption, rather than a transfer of shares from one person to another" as in the ordinary corporate stock transaction. TEX. BUS. & COM. CODE ANN. § 8.103(b) cmt. 3 (Vernon Supp. 1999). Subsection (c) is intended to clarify the application "of the type" language in section 8.102(a)(15)(iii) to partnership interests and establishes the general rule that a partnership or limited partnership interest is not a security unless it is commonly dealt in or traded on the financial markets, it has an explicit opt-in provision, or it is an investment company security. *Id.* cmt. 4. *See generally* Andrea G. Nadel, J.D., Annotation, *What is a Security Under UCC Art. 8*, 11 A.L.R. 4th 1036, § 11 (Supp. 1998) (discussing cases generally holding partnership interest not securities). Finally, subsections (e) and (f) make clear that trade-stock options or commodity contracts are not securities. *Id.* cmt. 6; *see generally* 11 A.L.R. 4th 1036 (1982 & Supp. 1998) (discussing generally instruments found by courts to constitute "securities" under UCC chapter 8).

In sum, chapter 8 of the Business and Commerce Code provides a functional and flexible definition of securities (the "UCC definition"). TEX. BUS. & COM. CODE ANN. § 8.102 cmt. 15 (Vernon Supp. 1999); *id.* § 8.103 cmt. 1; *Kenney*, 604 S.W.2d at 301 (definition and comments explain parameters of what instruments qualify as security). Given that the UCC definition generally requires that securities be instruments commonly dealt in or traded on the securities market or exchange—the common understanding of the term "securities"—we believe that this definition is more likely to express the intent of the legislature and the people in adopting article XVI, section 67, than the more amorphous definitions found in regulatory statutes and dictionaries.

We note that the underlying purpose of chapter 8 is different from that of article XVI, section 67. The underlying purpose of the constitutional provision is to safeguard the funds *and* maximize returns to provide security for teachers. Chapter 8, on the other hand, is designed to define the rights and duties associated with investments that qualify as securities and to state the rules relating to the transfer and establishment of those rights and duties. TEX. BUS. & COM. CODE ANN. § 8.101 cmt. (Vernon Supp. 1999). Nevertheless, because chapter 8 addresses investment securities, its purpose is more compatible with that of the TRS constitutional provision than the federal and state securities regulatory statutes. The UCC definition is more fixed and certain. *See id* §§ 8.102(a)(15), .103; *see also Thomas v. Creager*, 107 S.W.2d at 710 (favoring construction of constitutional provision that will cause fewer or less complicated questions in its application). Generally, its purpose is to encompass instruments commonly accepted as securities. TEX. BUS. & COM. CODE ANN. §§ 8.102(a)(15), .103 (Vernon Supp. 1999). As a result, although fewer investments qualify as securities under the UCC definition than under the regulatory definitions, a more restricted class of

investments comports more with the constitutional purpose of defining a universe of securities in which moneys to provide teachers' retirement benefits may be safely and profitably invested.

But while more restrictive in some ways than the regulatory statutes' definitions, the UCC definition is not categorical. Unlike former article III, section 48b of the Texas Constitution, the Public Funds Investment Act, or article 717m-1 of the Revised Civil Statutes, it does not set forth an exclusive list of investment categories. Instead, it defines "securities" according to certain attributes that allow incorporation of a new investment product that becomes generally accepted as a medium of investment in the financial markets, as long as the instrument otherwise conforms to the statutory requirements. *See* TEX BUS. & COM. CODE ANN. § 8.102 cmt. 15 (Vernon Supp. 1999) (explaining first two components of section 8.102(a)(15) test that must be satisfied and noting that third requirement, the "functional test," provides flexibility "while ensuring that the Article 8 rules do not apply to interests or obligations in circumstances so unconnected with the securities markets . . .").

Moreover, the UCC definition provides more guidance than the other definitions we have considered. Sections 8.102(a)(15) and 8.103 and the official comments to these sections explain the parameters of the class of instruments qualifying as securities. *See id.* §§ 8.102, .103 & cmts. Accordingly, the more concrete UCC definition provides a better framework for determining whether a particular instrument is a security than definitions phrased in general, descriptive terms, such as notes, bonds, debentures, and similar terms. *See Kenney*, 604 S.W.2d at 301 (definition and comments explain parameters of the instruments qualifying as securities).

While not a perfect fit, we believe the UCC definition of security is a better fit than any other definition of which we are aware. We believe the UCC definition generally comprises the instruments commonly understood to constitute securities and as a result represents a better balance of investment flexibility and fiscal restraint. Additionally, it also provides a more functional criterion for determining whether particular instruments are securities. Moreover, this definition was in place when the legislature proposed adoption of the TRS constitutional provision, and it is reasonable to assume that the legislature understood the term "securities" to be defined as it is in chapter 8 of the UCC. Accordingly, we advise you that the term "securities" as used in Texas Constitution article XVI, section 67, is to be defined according to the UCC definition, until the legislature adopts a definition pursuant to the constitutional provision or until it is judicially defined.

## III.  TRS authority under the UCC definition

In questions two and three, you ask whether specific kinds of instruments are securities in which the TRS trust fund may be invested:

> 2.  Will an investment in "alternative," real estate-related, or other asset classes having similar investment attributes constitute a security in which TRS may invest if it is an instrument or vehicle listed, defined, or specified as a "security" either in The Securities Act, or in a federal securities law, or in the securities law of another state, or by the Securities and Exchange Commission?

> 3.  Do any of the following vehicles or investments constitute "securities" which are listed, defined, or specified as a "security" in The Securities Act and therefore require no further "security" analysis by TRS: a limited partnership, a limited liability partnership (LLP), a limited liability company (LLC), a real estate investment trust (REIT), a real estate operating company (REOC), a group trust or commingled fund, joint ventures, financial futures, or investment accounts?  If so, please identify which vehicles or investment categories constitute securities.

We have determined that "securities" within article XVI, section 67(a)(3) is to be defined in according to the definition of that term in the Uniform Commercial Code, while your questions are framed in light of prior opinions defining "securities" according to the state and federal regulatory statutes.  In answer to questions two and three, we advise you that the TRS trust fund may be invested in instruments defined as securities by sections 8.102(a)(15) and 8.103 of the Business and Commerce Code.  The attributes of a particular investment are more important than the name of the category to which the investment belongs.  Although you name certain types of enterprises or investments, you do not provide information about their attributes that would allow us to determine even generally whether they constitute securities under sections 8.102(a)(15) and 8.103.  For example, even the provision excluding limited partnerships as a general matter from the definition of "securities" has exceptions.  See TEX. BUS. & COM. CODE ANN. § 8.103(c) (Vernon Supp. 1999) (partnership or limited partnership interest is not a security *unless* it is commonly dealt in or traded on the financial markets, it has an explicit opt-in provision, or it is an investment company security).  Because the definition of "securities" from chapter 8 of the Business and Commerce Code provides much greater clarity than the definition from the regulatory statutes, we believe that the TRS itself will be able to answer many of its questions about particular investments.  If questions remain about specific investments, the TRS Board may of course seek advice from this office.

Your fourth and fifth questions are as follows:

> 4. If your answer to #2 or #3 above is negative in any respect or in cases where the task is to analyze and determine whether an investment instrument or vehicle is a security under Texas law, will an investment in "alternative," real estate-related, or other asset classes having similar investment attributes constitute a security in which TRS may invest if it is an instrument or vehicle which meets the requirements of an investment contract under the *"Howey* test," as applied by Texas courts? *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and its progeny, including federal and Texas cases. If any vehicle or investment category listed in #3 is not identified by you as a "security," will or may such a vehicle or investment category qualify as a security under the *Howey* test?

> 5. What criteria are available to assist TRS in determining the level of participation or the control features TRS may have as reflected in the negotiated provisions of the investment documents, *e.g.* the investment contract documents or the limited partnership agreement, without jeopardizing the "security" designation of a particular investment.

Given that we believe that the UCC definition of "securities" informs the meaning of that term in article XVI, section 67, the *"Howey* test" is inapposite. That test developed under the securities regulatory statutes, which we believe are at cross-purposes with the constitutional authorization in article XVI, section 67(a)(3). Accordingly, TRS should rely on the more certain yet flexible UCC definition.

We also wish to point out that, despite our overruling of Attorney General Opinion MW-152, real estate itself is not a "security" for purposes of article XVI, section 67(a)(3) of the Texas Constitution, because it is not included in the definition of "securities" found in chapter 8 of the Business and Commerce Code as discussed above. *See* TEX. BUS. & COM. CODE ANN. § 8.102(a)(15) (Vernon Supp. 1999) ("security" is a share or participation in enterprise, that is fully transferable and is one of a series rather than an individual contract). Moreover, Attorney General Opinion MW-152 concluded that, "[i]n view of the long established and dominant legislative and judicial construction that realty is not within the ambit of "securities," it is our opinion that constitutional amendment would be necessary to enable the board of trustees of the Teacher Retirement System to invest its funds in real property." Our decision about the definition of security has not changed this conclusion.

## IV.    Delegation of investment authority

Your remaining question concerns whether the Board may delegate authority to manage certain investments to outside persons:

> 6. May TRS use its authority under § 825.301(b) of the Texas Government Code to allocate responsibilities to outside managers in the management of "alternative" or real estate-related securities? *See* TEX. GOV'T CODE ANN. § 825.301(b) (Vernon 1994).

By "outside manager," we understand you to mean "external manager." An "external manager" is "[a] person or firm that makes investment portfolio decisions and executes transactions independently, subject to the overall restrictions agreed upon by contract between the fiduciary for the fund and the external manager." Review *supra*, at 179. An external manager's role differs from that of an "investment advisor," who is retained by an investing entity to provide investment advice for a fee. *Id.* at 180. An investment advisor may, for example, present information about the economic climate in general or industry information that may affect the entity's decisions about investing in specific securities. *Id.*

The report prepared by Independent Fiduciary Services, Inc. discusses the merits of internal versus external investment management of TRS funds and recommends that the Board "seek to obtain appropriate clarification or support (whether through legislation, constitutional amendment, if necessary or otherwise), permitting it to delegate investment authority." IFS Report *supra*, at 7, 14, 16, 54. Accordingly, you ask whether section 825.301(b) authorizes TRS to delegate to private persons or firms the authority to make investments on its behalf, subject to restrictions agreed upon by TRS and the private person or firm.

Section 825.301(b) of the Government Code provides as follows: "The board of trustees may contract with private professional investment managers to assist the board in investing the assets of the retirement system." TEX. GOV'T CODE ANN. § 825.301(b) (Vernon 1994).

In Attorney General Letter Opinion No. 92-37 this office construed a similar provision applicable to the trustees of certain municipal fire fighter retirement systems. Section 28(a) of article 6243e of the Revised Civil Statutes formerly authorized the board of trustees to "employ professional investment counselors to *assist and advise the board in the investment of the assets of the fund.*" (Emphasis added). Act of Apr. 27, 1989, 71st Leg., R.S., ch. 98, § 1, 1989 Tex. Gen. Laws 426, 436, *amended by* Act of May 7, 1993, 73d Leg., R.S., ch. 173, § 12, 1993 Tex. Gen. Laws 326, 328. This office concluded that subsection 28(a) "clearly does not permit the board of trustees to delegate its entire discretionary authority over investments to a professional investment counselor," and that the phrase "assist and advise" circumscribed the duties of any investment counselor selected by the

Board, "to the extent that the board will retain all final decision-making with regard to investments."

In our opinion, Attorney General Letter Opinion No. 92-37 correctly interpreted the phrase "assist and advise." Under article 825.301(b), the TRS Board may seek advice from outside investment counselors to assist it in making its investment decisions, but the Board must retain final decision-making as to all investments and may not delegate to outside investment managers the power to decide which securities to purchase with assets of the retirement fund.

A comparison of article 825.301(b) with provisions expressly authorizing such delegations supports our construction of article 825.301(b). Section 28 of article 6243e of the Revised Civil Statutes, the statute on municipal fire fighter retirement systems that Attorney General Letter Opinion No. 92-37 construed, has been amended to read as follows:

> (a) The board of trustees . . . may appoint investment managers for the system by contracting for professional investment management services with one or more organizations, which may include a bank if it has a trust department, *that are in the business of managing investments.*
>
> . . . .
>
> (c) In a contract made under this section, the board of trustees shall specify policies, requirements, and restrictions . . . that the board of trustees adopts for investments of the system.
>
> (d) [board must act prudently in choosing and contracting for professional investment management services] . . . .
>
> (e) *A trustee is not liable for the acts or omissions of an investment manager appointed under this section, nor is a trustee obligated to invest or otherwise manage any asset of the system subject to management by the investment manager.*
>
> (f) A *board of trustees . . . may employ professional investment counselors to assist and advise the board in the investment of the assets of the fund* or to evaluate the performance of an investment manager appointed under this section.

Act of May 7, 1993, 73d Leg., R.S., ch. 173, § 12, 1993 Tex. Gen. Laws 326, 328 (emphasis added).

The amended version of article 6243e, section 28 adds significant new authority to a board's existing power to receive advice from professional investment counselors. A board may now contract with an organization, including a bank with a trust department, to manage and invest the assets of the system. *See* TEX. REV. CIV. STAT. ANN. art. 6243e, § 28(a), (e) (Vernon Supp. 1999). If the board decides to continue to invest some or all of the assets of the fund, it retains authority under section 28(f) to seek assistance and advice from a professional investment counselor. The Board of TRS, in contrast, has only the authority to contract for advice and assistance concerning its investment decisions. Nothing in section 825.301(b) allows the TRS Board to delegate investment authority to outside managers that section 28 of article 6243e of the Revised Civil Statutes gives to the boards of municipal fire fighter retirement systems.

Article XVI, section 70 of the Texas Constitution, which established the Texas Growth Fund under a board of trustees, states that the board of trustees shall manage the investment of the fund, and may "employ and retain staff, including a chief executive officer; . . . set investment policy of the fund; . . .[and] adopt rules regarding the operation of the fund." "[A]lternatively, or in combination with its own staff," the board may "contract for the management of investments under this section with a private investment management firm . . . ." Because our conclusion rests on statutory grounds, we need not, and do not, decide the significance, if any, of these differences in constitutional wording.

Because we have determined that TRS lacks statutory authority under Government Code section 825.301(b) to delegate investment authority to outside managers, we do not decide whether article XVI, section 67(a)(3), would permit such delegation by TRS of its investment authority to outside managers. As we have already noted, however, article XVI, section 67(c) places fewer constraints on local benefit systems, such as systems benefitting local firefighters, than article XVI, section 67(a)(3) places on statewide retirement systems such as TRS. Further, we note the existence of constitutional authority related to the Texas Growth Fund that provides more explicitly for delegation.

Our reading of the statutory authority of the TRS Board of Trustees is consistent with case law on the delegation of a trustee's authority. Generally, a trustee may not delegate his discretionary power to another; however, a trustee, after determining how to exercise his discretion, may authorize another to carry out ministerial or mechanical acts to effectuate such decision. *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 476 (Tex. 1979); *West v. Hapgood*, 174 S.W.2d 963 (Tex. 1943). There is an exception to the rule against a trustee's delegation of his discretionary power to another, where the settlors give the trustee the express power of delegation. *Transamerican Leasing Co.*, 586 S.W.2d at 476. Because the Board of TRS does not have express authority to delegate its authority to invest in securities to private firms, the exception does not apply. Accordingly, the trustees of TRS may not allocate to private investment managers their power to decide to invest the TRS fund in particular securities.

## S U M M A R Y

The Board of Trustees of the Teacher Retirement System of Texas ("TRS") has authority under article XVI, section 67(a)(3) of the Texas Constitution to invest the funds of the retirement system "in such securities as the board may consider prudent investments." TEX. CONST. art. XVI, § 67(a)(3). In the absence of legislation defining "securities" within this provision, this term is defined as the authorized investments set out in chapter 8 of the Texas Business and Commerce Code. The conclusions of Attorney General Opinion MW-152 (1980) and Letter Opinion No. 94-052, that "securities" for purposes of TRS investment is defined by the state and federal securities regulatory statutes, are overruled. However, Attorney General Opinion MW-152 correctly determined that real property is not a security within article XVI, section 67(a)(3) of the Texas Constitution.

The Board of Trustees may seek advice from outside investment counselors to assist it in making its investment decisions; the Board may not, however, delegate to external investment managers its authority to decide in which securities the TRS fund is to be invested.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General